[No. 17209.  *En Banc.*  June 15, 1923.]

INLAND FINANCE COMPANY, *Respondent*, v. INLAND MOTOR CAR COMPANY, *Defendants*, J. I. CASE THRESHING MACHINE COMPANY, *Appellant*.[1]

SALES (171)—CONDITIONAL SALES—DISTINGUISHED FROM CONSIGNMENT FOR SALE.  Where a manufacturer of automobiles left a car with a retail dealer "on consignment" for display in the show rooms to be paid for when sold, the transaction was a sale on consignment and not a conditional sale which would be absolute unless recorded; hence the dealer's unauthorized mortgage of the car to a finance company passed no interest (PARKER, HOLCOMB, and PEMBERTON, JJ., dissenting).

ESTOPPEL (20, 21)—RELIANCE ON ACTS DONE OR OMITTED—CHANGE OF POSITION.  One taking a fraudulent mortgage from a dealer, holding an automobile on consignment for sale, cannot sustain his lien on the principle of estoppel, where the owner had not done anything to mislead the mortgagor, especially where there was no showing that he was not a participant in the fraud.

Appeal from a judgment of the superior court for Spokane county, Oswald, J., entered December 17, 1921,

[1]Reported in 216 Pac. 14.

in favor of the plaintiff, in an action to foreclose a chattel mortgage, tried to the court. Reversed.

*D. R. Glasgow* and *Don F. Kizer,* for appellant.

*O. C. Moore,* for respondent.

*Fred B. Morrill* and *Caleb Jones, amici curiae.*

FULLERTON, J.—The appellant, J. I. Case Threshing Machine Company, is a manufacturer of automobiles, having its factory and principal place of business at Racine, Wisconsin. It maintains a branch establishment in the city of Spokane, Washington, for the wholesale marketing of its product in the northwest. The defendant Inland Motor Car Company is a corporation now in the hands of a receiver. While a going concern, this company was engaged in the retail sale of automobiles, maintaining establishments in both the city of Spokane and the city of Yakima for that purpose. A part of its business was the retail sale of automobiles manufactured by the appellant. These it generally purchased outright from the appellant, usually in car load lots. The respondent, Inland Finance Company, was engaged in the business of financing retail dealers in automobiles, and sometimes lent its aid to the defendant in financing its purchases from the appellant.

In August, 1920, the Inland Motor Car Company wrote to the appellant at Racine, Wisconsin, calling its attention to the fact that an interstate fair was soon to be held at Spokane, to be followed later by a state fair at Yakima, and urged the advisability of shipping a car load of certain makes of its cars to be unloaded at its branch office at Spokane for exhibition at these fairs. The appellant complied with this request, thereafter shipping three cars for that purpose, which were exhibited at the fairs mentioned. One of these cars

was a coupe, and, near the close of the fair at Yakima, the motor car company sent the following telegram to the appellant at Racine:

"Will you allow coupe now on exhibition at Yakima to remain in our show rooms at Yakima on consignment instead of driving car back to Spokane. We will positively pay for coupe within thirty days. Wire."

The appellant did not reply directly to the motor car company, but by telegram advised its Spokane manager of the request, and authorized him to use his judgment with respect to the matter. The manager concluded to grant the request, and the automobile was left with the motor car company and placed in its show rooms at Yakima. Stating the agreement under which the car was left, the manager used this language:

"I arranged with him [meaning the manager of the motor car company] that the car should remain at Yakima on the sample floor of the Inland Motor Car Co. for the specific purpose, not to be taken from the floor, and with the understanding that when the car was sold it was to be paid for."

On December 17, 1920, the Inland Motor Car Company mortgaged the automobile to the Inland Finance Company to secure a promissory note, bearing date upon that day and payable on March 17, 1921, for the sum of $2,386.30, with interest at the rate of one per cent per month. On July 20, 1921, the appellant took the car from the possession of the Inland Motor Car Company in Yakima county and drove it to its place of business at Spokane. The mortgage was not recorded in the county of Spokane.

On August 31, 1921, the Inland Finance Company began the present action to foreclose the mortgage. In addition to the Inland Motor Car Company, it made the appellant a party defendant, alleging that it

claimed some interest in the automobile, but that such interest, if any it had, was subsequent and inferior to the lien of the mortgage. The appellant took issue on the complaint, and contested the mortgagee's right to foreclose. The trial resulted in a judgment of foreclosure, and this appeal is from judgment entered to that effect.

The trial court rested its conclusion on the ground that the transaction between the appellant's agent and the Inland Motor Car Company, by means of which the latter company obtained possession of the car, was a contract of conditional sale, and from this drew the conclusion that, since the contract was not reduced to writing, signed by the parties, and filed in the auditor's office in accordance with the terms of the statute (Rem. Comp. Stat., § 3790) [P. C. § 9767], it was a sale absolute as to all *bona fide* purchasers, pledgees, mortgagees, encumbrancers and subsequent creditors; holding further that the respondent was a *bona fide* mortgagee, and that in consequence its mortgage is valid. With reference to the failure of the respondent to file its mortgage in Spokane county after the mortgaged property had been removed to that county, it held that the appellant was not in a position to make the objection; that, since the title to the property as to it became absolute in the motor car company because of the failure to properly file the contract of conditional sale, the title was likewise absolute as to it in the county of Spokane; that it is only against subsequent purchasers or lien holders that the mortgages need to be recorded in the county to which the property is removed, and that the appellant is not within either of these classes.

It is our opinion that the trial court was in error in holding the agreement between the appellant and the motor car company to be a contract of conditional sale.

A conditional sale, as the very terms imply, is a sale in which the transfer of the title to the buyer, or his retention of the title, is made dependent upon some condition. Usually the condition imposed is the payment of the purchase price, but, whatever may be its nature, to constitute a conditional sale there must be a contract between the parties by which the one party agrees to sell and the other party agrees to buy. This is not only the general understanding of such a transaction, but it is the transaction the statute regulates. The wording of the statute is (see Rem. Comp. Stat., § 3790) [P. C. § 9767]:

"That all conditional sales of personal property, or leases thereof, containing a conditional right to purchase, where the property is placed in the possession of the vendee, shall be absolute . . . unless . . . a memorandum of such sale, stating its terms and conditions . . . shall be filed . . ."

These words plainly imply an agreement to sell on the one part and to buy on the other, and just as plainly imply that without such an agreement there is no conditional sale.

Turning to the record, it is at once apparent that there was no contract on the part of the appellant to sell, nor any contract on the part of the respondent to buy, the automobile here in question. The contract between them was a contract of consignment, under which the motor car company had the right to sell the automobile for and on behalf of the appellant. But it carried no right in the consignee to mortgage, pledge, barter or exchange the property for its own purposes, nor to sell it for a prior debt of its own, and hence the consignee's attempt to mortgage it was invalid. *Eilers Music House v. Fairbanks*, 80 Wash. 379, 141 Pac. 885.

Nor can we agree with the contention of the respond-

ent that the mortgage can be sustained on the doctrine of estoppel. An estoppel operates only in favor of those who have been misled to their injury (*Smith v. King County*, 80 Wash. 273, 141 Pac. 695), and the burden of proof is upon the party who asserts the estoppel. *Blanck v. Pioneer Mining Co.*, 93 Wash. 26, 159 Pac. 1077. Here there was no evidence that the mortgagee had been in any way misled by the conduct of the appellant, much less a showing that it had been misled to its injury. There is a presumption, of course, that every business transaction is a transaction in good faith, but the presumption never outlives a positive showing that it is not so. When it was shown that this transaction was in fraud of the appellant's rights, it was at least incumbent upon the mortgagee, if it is to maintain an estoppel, to show that it was not an active participant therein. This it made no attempt to do; it did not even show that the note and mortgage evidenced a new loan made by it to the mortgagor, and this, notwithstanding the very strong presumption arising from the instruments themselves, and from the transaction as a whole, that there was but an attempted security of an antecedent debt.

Our conclusion is that the judgment must be reversed with instructions to dismiss the action. It is so ordered.

MAIN, C. J., MACKINTOSH, and BRIDGES, JJ, concur.

PARKER, J. (dissenting)—I concur in the view that the judgment should be reversed, but dissent from the views of Judge Fullerton as to the ground he has rested the reversal upon. I am of the opinion that the agreement between appellant and the motor car company was in legal effect as between them a conditional sale contract; and that, because of want of record thereof in the auditor's office of Yakima county, it became an

absolute sale as to the mortgage lien of respondent
thereafter acquired, as long as that lien continued to
be a valid and subsisting lien.   However, as between
appellant and the motor car company, appellant had a
right, upon the failure of the motor car company to pay
the agreed purchase price, to reclaim possession of the
automobile and remove it to its branch in Spokane
county at the time it did so.   I am at a loss to see that
any legal wrong was committed by appellant as against
any one in so taking possession of the automobile and
removing it to Spokane county.   It is true the mortgage
lien of respondent was then a valid and subsisting lien
upon the automobile; and we may concede that it re-
mained a valid and subsisting lien as against the motor
car company even after the removal of the automobile
to Spokane county, because the want of record in that
county would not affect the mortgage lien as between
respondent and the motor car company, the parties to
the mortgage.   But I think that does not argue that the
mortgage remained a valid and subsisting lien against
appellant's interest in the automobile longer than
thirty days following the removal of the automobile
to Spokane county.   In § 3788, Rem. Comp. Stat. [P.
C. § 9748], relating to the preservation of mortgage
liens upon personal property removed from the county
of the situs of the property when mortgaged, we read:

"When personal property mortgaged is thereafter
removed from the county in which it is situated, it is,
as except between the parties to the mortgage, ex-
empted from the operation thereof, unless either:
"1.   The mortgagee within thirty days after such
removal causes the mortgage to be recorded in the
county to which the property has been removed; or
"3.   The mortgagee within thirty days after such
removal takes possession of the property:  . . ."

In. *Turner v. Caldwell,* 15 Wash. 274, 46 Pac. 235, there was drawn in question a claimed mortgage lien upon personal property which had been removed from the county of its situs in which the mortgage was of record to another county more than thirty days after such removal. Disposing. of such claim, this court said:

"Appellants contend that the property was surreptitiously taken from Chehalis county to Mason county without their knowledge or consent. They furthermore offered to show that the respondents, at the time of the levy, knew of the existence of the mortgage. We are of the opinion that this was insufficient to sustain appellants' claim. The statute (§ 1649, Gen. Stat.) provides that when personal property is removed from the county, it is, except as between the parties to the mortgage, exempted from its operation unless within thirty days after such removal the mortgage is recorded in the county to which the property has been taken, etc.; and this without regard to any knowledge of the existence of such mortgage by the parties subsequently claiming the property. The obligation was upon the mortgagee to keep track of the mortgaged property and see that the same was not taken from the county where it was mortgaged, or that the mortgage lien was preserved as pointed out by the statute."

Section 1649, Gen. Stat., therein referred to, is now § 3788, Rem. Comp. Stat. [P. C. § 9748], above quoted. It is true in that case the levy which effected the taking of the property from the mortgagor in the county to which it had been removed occurred more than thirty days following such removal; and in this case the taking and removal of the automobile to Spokane county and the commencement of appellant's possession of it in Spokane county occurred within thirty days following its removal to that county; but this, according to our recent *En Banc* decision in *Muller v. Bardshar,* 119

Wash. 252, 205 Pac. 845, does not militate against the rights of appellant to have the mortgage lien of respondent declared terminated upon the expiration of the thirty days within which, according to the statute, the mortgage must be recorded in the county to which the property is removed, in order to preserve the mortgage lien. In other words, it is not a question of when appellant took possession of the automobile, but it is a question of whether or not respondent preserved its mortgage lien as against appellant by a timely record of its mortgage in Spokane county. Of course, if appellant had no higher right to the automobile than the motor car company, the mortgagor, the mortgage lien would be good as against appellant in the absence of record of the mortgage in any county, because, as between a mortgagor and mortgagee and those whose rights are identical with the mortgagor, the mortgage is good without any record. I am quite convinced that appellant's rights are not identical with those of the mortgagor, the motor car company, but are superior to those of the motor car company; in other words, that appellant not only had the reserved title to the automobile under the conditional sale contract, but, upon taking possession thereof upon failure of the motor car company to comply with the conditions of the sale contract, appellant became the absolute owner of the automobile as against the motor car company.

This is not a case of appellant's taking advantage of its own wrong, as it could be said to be of a mortgagor wrongfully removing the mortgaged property from the county of its situs in which the mortgage is made of record; for appellant did have the absolute right to take and remove the property to Spokane county as against the mortgagor, the motor car company. For whatever impairment of respondent's rights there was

thus effected it had the right and duty, under the stat-
ute, of causing its mortgage to be recorded in Spokane
county, or suffer the loss of its lien rights at the end
of a period of thirty days following the removal of the
automobile from Yakima county to Spokane county.
Failing to so preserve its mortgage lien rights, the
automobile, at the expiration of that period, became
"exempted from the operation" of the mortgage. I
think our decision in *Muller v. Bardshar, supra,* is in
principle decisive of this case as against respondent.
It is for these reasons I concur in the reversal of the
judgment.

HOLCOMB, J., concurs with PARKER, J.

PEMBERTON, J. (dissenting)—I am of the opinion
that the judgment of the trial court should be affirmed,
and I therefore dissent.