[No. 26026. Department One. April 20, 1936.]

FORD J. PEABODY, *Respondent*, v. STAR SAND COMPANY et al., *Appellants.*[1]

*Dey, Hampson & Nelson* and *John F. McCarthy,* for appellants.

*Ronald Moore,* for respondent.

STEINERT, J.—This is an action for damages for alleged breach of contract. Trial before the court, without a jury, resulted in a judgment for plaintiff. Defendants have appealed.

Inasmuch as Star Sand Company is the principal

[1]Reported in 56 P. (2d) 1018.

party concerned in the defense of this action, we shall hereinafter refer to it alone as appellant.

Sometime prior to April 16, 1934, appellant entered into two written contracts with Washington Emergency Relief Administration (hereinafter referred to as W. E. R. A.), under which appellant was to furnish and deliver rock for riprapping two dikes, opposite each other, on the Cowlitz river. Under the first of these contracts, appellant was to furnish and deliver, by truck, seven thousand cubic yards of rock upon the dike located on the east bank of the river, in Diking District No. 13 (hereinafter referred to as dike No. 13), and was to be paid therefor at the rate of two dollars per cubic yard of rock so delivered. Under the second contract, appellant was to furnish and deliver, by barge, ten thousand cubic yards of rock upon the dike located on the west bank of the river, in Diking District No. 1 (hereinafter referred to as dike No. 1), and was to be paid therefor at the rate of $1.60 per cubic yard of rock so delivered.

On April 16, 1934, appellant and respondent entered into the contract here involved, which was in the nature of a subcontract pertaining to the delivery of rock on dike No. 13. By the terms of that contract, or subcontract, respondent was to haul the rock which appellant was required to deliver by truck on dike No. 13, under its contract with W. E. R. A. For this work, respondent was to be paid at the rate of $1.10 per cubic yard so delivered. Payments to respondent were to be made at such times as appellant received its payments from W. E. R. A. Respondent's contract contained this further provision:

"It is understood and agreed between the parties that the amount of rock to be delivered under the contract between the Company [appellant] and the Washington Emergency Relief Administration is indefinite

and the amount thereof is subject to the requirements of the Engineer in Charge to rip-rap said dike to the satisfaction of said Engineer. Should the amount of rock deliverable under said contract be less than the amount estimated at the present time, there shall be no liability on the part of the Company hereunder on account of any decrease in the yardage of the rock to be hauled under this contract.''

It will be observed that the rock for dike No. 13 was to be delivered by *truck,* while that for dike No. 1 was to be delivered by *barge.* It may be further stated, at this point, that respondent was in no way interested in, or concerned with, the barge contract affecting dike No. 1.

The various contracts to which we have just alluded were made pursuant to a comprehensive flood-control project affecting the Cowlitz river. The entire project was under the supervision of a United States Army engineer, Captain Damon.

Respondent made deliveries under his contract over a period of eight days, and during that time delivered 1,854.5 cubic yards of rock, by truck, on dike No. 13. On or about April 24, 1934, all operations came to a sudden end by reason of the fact that W. E. R. A. had exhausted its funds. Respondent was thereupon instructed to cease hauling, which he did.

In the meantime, that is to say while respondent was still making deliveries by truck upon dike No. 13, Captain Damon, the engineer in charge, instructed appellant to make additional deliveries of rock upon that dike by *barge,* but with the understanding that such deliveries were to be charged to the barge contract covering dike No. 1. The amount of rock delivered by appellant on dike No. 13, by barge, up to the time of the cessation of operations, was 3,032.3 cubic yards. This amount of rock was charged to dike No. 1, at the barge contract rate of $1.60 per cubic yard. It is con-

ceded by respondent that it would have required twelve additional days for him to have hauled the amount of rock which appellant delivered by barge upon dike No. 13.

Respondent was fully paid for all rock actually delivered by him, and no question is raised upon that phase of the matter.

It was the theory of respondent that appellant breached its contract with him by delivering rock by barge upon dike No. 13 and permitting the amount so delivered to be charged against dike No. 1. The trial court followed respondent's theory and allowed him to recover the amount of the alleged profits which respondent would have earned had he hauled, by truck, the additional amount of rock delivered by barge. We are unable to follow respondent's theory or the trial court's findings and conclusions.

The terms of a contract are controlling and, when plain and unambiguous, are to be given effect, and not to be rewritten by the court. The contract between respondent and appellant did not provide that respondent should, or was to be permitted to, haul *all* rock to be delivered on dike No. 13, but only the rock *required to be delivered by truck* under the contract between appellant and W. E. R. A. According to respondent's contract with appellant, the amount of rock to be delivered by the appellant on dike No. 13, under its contract with W. E. R. A., was indefinite and subject to the requirements of the engineer in charge. Assuming, however, that, under the contract, the amount was to be seven thousand cubic yards, the fact is, and respondent concedes, that he was permitted to, and did, haul all the rock delivered on dike No. 13 by truck. That was all that he was entitled, or required, to do.

Although appellant, upon instructions and at the di-

rection of the engineer in charge, delivered, additionally, on dike No. 13, 3,032.3 cubic yards of rock, *by barge*, that delivery was not charged, nor was it referable, to dike No. 13, but to dike No. 1. The record discloses that W. E. R. A. did not diminish the amount of rock deliverable on dike No. 13, under the trucking contract, by the amount delivered thereon by barge. On the contrary, the records of that bureau, which were admitted in evidence, disclose that the amount of rock undelivered on dike No. 13 was 5,145.5 cubic yards, which was the exact amount still deliverable by respondent under his contract, if operations should be resumed.

Respondent was not prevented from performing his contract, or any part of it, because of the barge deliveries, but because W. E. R. A. had exhausted its funds and shut down all operations. Respondent in no way complains of the shut-down, nor does he present any claim thereon. He does not insist on performing his contract by continuing deliveries despite the shutdown. The reason for this is obvious. By the terms of his own contract, he was to be paid for his deliveries when the appellant was paid by W. E. R. A. But since that bureau had no funds with which to continue the work, the only alternative was to cease operations. Had respondent continued deliveries after that time, he would have been working for nothing, or at least would have been compelled to run the risk of never being paid.

There is another very important angle to the matter of the shut-down. It has already been stated that respondent made deliveries under his contract right up to the time that operations ceased. Had he been permitted, as he insists he should have been, to haul by truck the amount of rock delivered by barge, namely, 3,032.3 cubic yards, it would have required, for that

work, twelve additional days beyond the time when operations ceased. To put the matter in another way, if the barge deliveries had not been made as they were, equivalent deliveries by truck would never have been made by the respondent, under his contract, for the reason that the cessation of operations would have prevented it.

Respondent makes some contention to the effect that W. E. R. A. should not be permitted to "juggle" its records in such a way as to permit work done under one contract to be charged against another contract, nor to appropriate the funds allotted to one district to the expense of another district. The contention is not well founded. We have here a vast project of flood-control, not simply the matter of constructing two dikes. The project was in charge, and under the supervision, of a United States Army officer, who, it will be presumed, was proceeding with the work as a whole, according to its needs and in the manner considered the most advantageous and economical. It was upon the engineer's direction that the additional deliveries were made by barge upon dike No. 13. In making such deliveries, appellant did nothing more than what it had been instructed, and was entitled, to do.

In addition to this, respondent is in no position to complain that funds appropriated to dike No. 1 were expended on dike No. 13. He was in no way concerned with dike No. 1, or with the funds allotted thereto. If objection upon that score could be raised at all, it could only be raised by someone concerned with the improvement of dike No. 1.

The judgment is reversed, with direction to the trial court to dismiss the action.

MILLARD, C. J., TOLMAN, MITCHELL, and GERAGHTY, JJ., concur.