[No. 34308.   Department Two.   December 5, 1957.]

H. MILTON DIXON, *Appellant,* v. ROBERT GUSTAV *et al.,*
*Respondents.*[1]

*George P. Gruger* and *Thomas C. McCarthy,* for appellant.

*Koenigsberg & Hepfer,* for respondents.

[1]Reported in 318 P. (2d) 965.

DONWORTH, J.—This is an action by a realtor (based upon a portion of a written agreement, hereinafter set out) to recover a five per cent commission computed on the price received by respondents for the sale of certain land in King county.

The cause was tried to the court, sitting without a jury. At the close of all evidence the trial court dismissed the amended complaint with prejudice. This appeal follows.

Except as otherwise stated, respondent Mercia E. Gustav was not a participant in any of the events hereinafter described. Hence, Robert Gustav will be referred to as if he were the sole respondent.

The salient facts are:

On June 21, 1954, respondent, through appellant, executed an earnest-money agreement wherein he agreed to buy from H. F. Hustad and his wife all of the land in the plat of Westwood Hills (except one lot). The purchase price was $40,500, of which $20,000 was required as down payment. Respondent paid $3,500 as earnest money. He thereafter experienced difficulty in procuring the balance necessary to complete the down payment, but was successful in borrowing $6,500 towards it. He then arranged with the Hustads to defer payment of the remaining portion of the down payment, except the sum of $4,050, being the real-estate commission which appellant had earned from the Hustads in arranging the sale to respondent.

At the time of closing the Hustad-Gustav transaction (August 27, 1954), appellant and respondent entered into a contract entitled "Memorandum of Agreement." This writing refers to the earnest-money agreement of June 21, 1954, and recites, in part:

". . . Said earnest money receipt calls for a commission to be paid to Dixon by vendor of $4,050.00 plus 5% interest . . .

"It is agreed by Gustav that he will pay to Dixon a seller's real estate commission in the amount of $4,050.00 and that Dixon will look to Gustav for said commission instead of to the seller Hustad.

"Gustav agrees to pay said commission within thirty (30)

months or sooner. As further consideration for this agreement, *Gustav agrees to give Dixon the exclusive listing of said real estate for a period of at least one year and until said commission is paid in full.* Gustav agrees to pay Dixon a 5% real estate commission if, as, and when said property is sold, said commission being agreeable to Dixon." (Italics ours.)

Thereafter, on March 8, 1955, respondent gave written notice to appellant that the exclusive listing agreement was terminated. On April 29, 1955, the property was sold by respondents, husband and wife, through another real-estate broker. The latter was to receive a commission based upon the sale price of $97,900. Appellant, by this action, sought to recover five per cent of that sum as provided in the last paragraph of the above quoted agreement.

The trial court concluded that the memorandum above quoted

" . . . is a memorandum, employing a broker to sell real estate for compensation, and must conform with the statute of frauds of the State of Washington [RCW 19.36-.019 (5)] to be enforcible. . . . That the terms of said memorandum . . . are not sufficient to comply with the statute of frauds. . . . [and] are unenforcible in law."

Appellant's principal assignments of error are directed to these conclusions. (He challenges only two sentences in the findings of fact, which are hereinafter discussed.) It is argued that the agreement was not a contract for the employment of a broker to sell real estate, because it imposed no duty of performance upon appellant; that the promise of respondent to pay a five per cent real-estate commission was merely as "further" consideration for appellant's acceptance of respondent as a substituted debtor with respect to the Hustad obligation ($4,050).

We are unable to concur with appellant's argument, because to do so would compel us to give full effect to the first clause of the second sentence of the last paragraph and, at the same time, to ignore the second clause thereof (italicized above). The trial court could not, nor can we, read

out of this instrument the language used by the parties as specifically expressed therein.

In *Hering v. St. Paul-Mercury Indemnity Co.*, 50 Wn. (2nd) 321, 323, 311 P. (2d) 673 (1957), we recently restated three basic principles to be applied in the construction of contracts. They are: (1) The intention of the parties must control; (2) the intent must be ascertained from reading the contract as a whole; and (3) where the language used is unambiguous, an ambiguity will not be read into the contract.

An analysis of the memorandum of agreement sued upon, when considered in connection with the earnest-money agreement to which it refers, convinces us that it is, as concluded by the trial court, an agreement to employ a real-estate broker, and was intended

". . . to give Dixon [appellant] the exclusive listing of said real estate for a period of at least one year and until said commission [$4,050] . . . [was] paid in full."

It was appellant's duty to make a bona fide continuous effort to procure a purchaser for respondent's property. *Starszak v. Kochanik*, 199 Wis. 473, 227 N. W. 21 (1929).

It is unnecessary for us to consider whether or not the memorandum before us satisfies the requirements of the statute of frauds (RCW 19.36.010(5)), although the trial court's negative answer to that question forms the basis for its judgment of dismissal. If the judgment of the trial court is based upon an erroneous ground, it will be sustained if it can be based upon any legal ground within the pleadings and the proof. *LaHue v. Coca Cola Bottling, Inc.*, 50 Wn. (2d) 645, 648, 314 P. (2d) 421 (1957).

Without discussing in detail the evidence contained in the record, it is sufficient to state that we have attentively reviewed the testimony and the exhibits, and are unable to say that the evidence preponderates against the trial court's findings of fact (being the only findings assigned as error), reading, in part, as follows:

"That after August 27, 1954 defendant . . . made no effort to sell said real property. [and]

"That on or about March 8, 1955 the defendant Robert Gustav did send to the plaintiff, and the plaintiff did receive, a letter withdrawing from the plaintiff and cancelling the listing of said real property; . . ."

■ Hence, these findings of fact, being based upon conflicting evidence, will not be disturbed. *Lewis Pacific Dairymen's Ass'n v. Turner,* 50 Wn. (2d) 762, 770, 314 P. (2d) 625 (1957); *Silhavy v. Doane,* 50 Wn. (2d) 110, 309 P. (2d) 1047 (1957).

■ The foregoing findings of fact (since the evidence does not preponderate against them) compel the conclusion that respondent was justified in terminating the exclusive listing agreement and in employing another broker to sell the property. Since appellant's exclusive listing agreement had been terminated by respondent for sufficient cause on March 8, 1955, he was not entitled to a commission because of the sale of the lots thereafter made through a second broker.

Judgment affirmed.

HILL, C. J., FINLEY, ROSELLINI, and FOSTER, JJ., concur.