[No. 37853. Department One. December 9, 1965.]

HEATH NORTHWEST, INC., *Respondent*, v. CHARLES C. PETERSON *et al., Appellants.**

*Cartano, Botzer & Chapman*, by *Robert A. O'Neill*, for appellants.

*Croson, Johnson & Wheelon* and *Robert B. Leslie*, for respondent.

BARNETT, J.†—This action is on a written contract to recover rental payments for the lease of a sign.

---

†Judget Barnett is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

*Reported in 408 P.2d 896.

Appellant (defendant) Charles C. Peterson, in the autumn of 1962, went into business as a machine tool distributor in the city of Seattle. Shortly thereafter he entered into negotiations with respondent Heath Northwest, Inc. (plaintiff), a corporation engaged in the business of fabricating, selling, and leasing signs. As a result of these negotiations, appellant executed an instrument wherein he agreed to make 36 monthly payments of $68 each for the "use" of a sign, which respondent corporation agreed to construct, install and maintain. A customized "reader board" sign was fabricated by respondent and installed at appellant's business premises. Appellant used the sign for 8 months, making monthly payments totaling $544. But his business did not prosper, and he vacated the shop in September of 1962. The sign was abandoned, being left attached to the vacated premises, and the monthly payments ceased. Pursuant to the terms of the written contract, respondent declared the balance of the rentals accelerated and due, and, in December of 1962, brought suit for the total unpaid rentals in the amount of $1,904, plus taxes and fees. Prior to trial, the sign was removed from the building by respondent and has been in its possession since that time.

The trial court, sitting without jury, found for the respondent and entered judgment for the full amount sought. Peterson appealed.

Appellant's position at trial was that he did not agree to lease the sign, but instead contracted to purchase it on conditional sale. He offered testimony to the effect that a salesman of respondent corporation induced him to believe that the sign would become his after he had made the 36 monthly rental payments. The trial court refused to consider this evidence in interpreting the contract between appellant and respondent. Error is assigned to this ruling.

We hold that the trial court did not err in refusing to consider the extrinsic evidence. An examination of the writing disposes of appellant's contention that it is ambiguous. It is a lease and nothing else. It provides that appellant, denominated the "User," is to pay to respondent, denomi-

nated the "Owner," a monthly sum of $68 for 36 consecutive months for the "right and license to use" the display. Respondent undertakes to construct and install the sign, and to maintain and service it during the rental period. Respondent is to insure the property for the benefit of both parties, and reserves the right to repair or rebuild in the event of damage or destruction of the sign, "extending the term hereof for the period of removal and repair." The document contains no language concerning the passage of title at the end of the term or at any other time. It is expressly provided that "Upon the termination of this lease, or any extension hereof, the Owner shall have and retain the right to remove the display from the premises upon which it is installed."

Appellant's version of the contract, being diametrically opposed to this written provision, cannot be established by parol evidence. It is the law of this state that prior conversations and negotiations, in the absence of ambiguity, merge into the final integrated writing. Parol evidence is not then admissible to contradict the terms of the instrument. *Fleetham v. Schneekloth*, 52 Wn.2d 176, 324 P.2d 429 (1958).

The evidence establishes that a copy of the agreement was mailed to appellant by respondent, accompanied by a letter inviting appellant to scrutinize the document and to advise respondent if he did not find it to be in accordance with his understanding. Appellant failed to protest. He not only executed an unambiguous lease contract, but, when its explicit terms were directly called to his attention, he displayed no quarrel with its plain import. Under these circumstances, parol testimony cannot be permitted to transform a manifest lease agreement into a sale.

*Kindley v. Williams*, 76 S.D. 225, 228, 76 N.W.2d 227, 57 A.L.R.2d 1070 (1956), involved a similar situation. The parties executed a lease agreement for the use of an airplane over an 18-month period. They also made a contemporaneous oral agreement that title to the plane would pass to the user upon the completion of the term. The court

refused to consider this evidence. In holding that the contract was one of lease rather than of sale, the court said:

> The property is leased by the defendant to the plaintiff upon a monthly rental basis, and the agreement specifically provides that at the expiration of the lease plaintiff shall return to the defendant "the property in as good a condition as when received . . . ."
>
> . . . .
>
> The basis of respondent's claim is that the oral stipulations provide title to the airplane is to vest in him upon the completion of the rental payments. . . . [T]his claim is specifically refuted by the writing . . . .
>
> The writing having provided for the disposition of the airplane upon the completion of the rental payments it would seem also that we are bound to exclude the oral negotiations relating to this subject . . . .

The same reasoning is applicable here. The written contract specifically provides for the disposition of the sign at the end of the rental period. Extrinsic evidence that it was to be disposed of in a different way must be excluded.

Appellant also argues that, even if he is bound by the terms of the written contract, "in any event the provision for payment of 100% of the unpaid payments after repossession, is so disproportionate to the damages resulting from the breach so as to be entirely unconscionable and penal in nature." His argument is founded upon the uncontroverted evidence adduced at trial that the value of the sign was $1,360 (at which price it was offered to appellant in a cash purchase transaction) as compared to the agreed rentals. But the lease agreement provides that, in the event the "user" breaches any of the covenants,

> Owner may declare the balance of the payments herein provided for forthwith due and payable and the User agrees to pay such balance. In such event, in addition to the right of immediate payment of said balance the *Owner shall have the right to enter the premises and take possession of and remove the sign or display.* Should the User thereafter pay the balance of rentals together with all other amounts due and the cost of reinstalling the sign, *the User shall then have the right of use of the*

*sign to the end of the contract* under the provisions hereof. (Italics ours.)

Respondent brings this suit under the above provision. The evidence discloses that appellant abandoned the sign. Having vacated the premises, he never once sought possession of the display. It was retrieved by respondent pursuant to its right under the contract and then only long after its abandonment by appellant.

In both *Metropolitan Nat'l Bank of Seattle v. Hutchinson Realty Co.,* 157 Wash. 522, 289 Pac. 56 (1930), and *Mosler v. Woodell,* 189 Wash. 583, 66 P.2d 353 (1937), this court gave effect to contract provisions allowing the lessors to forfeit the lessees out of their rights to use the rented property after they had defaulted, and to recover the balance of the rentals as well.

In the instant case, the element of forfeiture is not even involved. The contract specifically accords appellant the right of possession and use upon payment of the balance of the rents. We fail to see how appellant considers himself penalized by having to pay the agreed rentals and thereby becoming entitled to the use of the sign to the end of the term. In addition, appellant's contention that the contract provides for the payment of a penalty must fall for the reason that the record contains insufficient evidence from which respondent's actual damages could be found so as to allow a comparison with the alleged "penal" amount.

Judgment affirmed.

ROSELLINI, C. J., HILL, OTT, and HUNTER, JJ., concur.