[No. 38359.    En Banc.    October 10, 1968.]

NORTHWEST COLLECTORS, INC., *Appellant,* v. EDWARD H. ENDERS *et al., Respondents and Cross-appellants,* CLEO A. SMITH *et al., Respondents.*\*

*Ennis & Klobucher, William G. Ennis,* and *Richard P. Guy,* for appellant.

*Olwell, Boyle & Hattrup,* for respondents and cross-appellants.

\*Reported in 446 P.2d 200.

ROSELLINI, J.—The plaintiff brought this damage action for breach of the terms of a written instrument designated "Lease of Personal Property." It was executed by the plaintiff's assignor, Guthrie Investments, Inc., as lessor, and defendant Edward H. Enders as lessee. Guthrie Investments, Inc., will be referred to in this opinion as "Guthrie," and Edward H. Enders as "Enders."

The pertinent facts are as follows: Enders desired to enter into a business venture and went to Parker Buck & Son, Inc., hereinafter referred to as "Parker Buck." Parker Buck was a seller of heavy equipment, including tractors of the type commonly used for hauling dirt. Enders went to Parker Buck because he was interested in acquiring the use of an International crawler tractor with loader and a four-in-one bucket, which was being offered for sale at the price of $16,800. Because Enders did not wish to make a substantial down payment or pay cash for the property, he entered into an arrangement whereby Guthrie purchased the equipment from Parker Buck and he, Enders, took possession from Guthrie and agreed to make monthly payments for a period of 4 years. A written instrument was executed by Enders on June 26, 1962. The instrument, called a "Lease of Personal Property," required monthly rental payments of $489.22, including sales tax. The total amount payable was computed by adding together the cost of the equipment and financing charges.

In July 1962, at Enders' request, Parker Buck located one Cleo A. Smith, hereinafter referred to as "Smith," who was engaged in the dirt-hauling business, and who agreed to assume the obligations of the agreement. For this service Enders paid Parker Buck $1,300, no part of which was paid to Guthrie. Guthrie was asked by Parker Buck, on behalf of Enders, to release Enders from all liability under the agreement upon its assumption by Smith. Guthrie refused, stating that Smith had inadequate responsibility. Guthrie did agree to the assignment and assumption whereby Smith became the possessor of the property as well as an obligor on the contract.

The assignment was signed August 8, 1962, and Smith took possession of the tractor. Subsequently, Smith defaulted on the payments and Guthrie made demand on Smith and Enders for the resumption of the monthly payments. The claim was then assigned to Northwest Collectors, Inc., the plaintiff and appellant in this action, and suit was commenced against Enders and Smith.

Thereafter, Smith gave possession of the tractor to one Bert C. Noble. While the plaintiff was aware of this transfer of possession by virtue of the fact that Smith had informed Guthrie, it did not agree to the transfer.

Smith refused to retake possession of the property from Noble, although he was asked to do so by Guthrie. An employee of Guthrie examined the tractor and found that it was damaged, partially dismantled and not operable. Once again Guthrie requested Smith to retake possession of the property, and on Smith's refusal, requested Noble to deliver the equipment to the Edmonds Equipment Company in Lynnwood, where it was repaired and reassembled. The equipment was subsequently taken to Spokane, the location of the main offices of Guthrie and Northwest Collectors, Inc., to avoid storage charges.

The plaintiff alleged in its complaint against Enders and others that monthly rental payments under the agreement were overdue and unpaid, and that the total rent due for the balance of the term, $18,345.60, was due and prayed for judgment against them in said sum together with costs, interest and attorney's fees.

Enders answered that he signed the instrument, but denied other material allegations of the complaint and as an affirmative defense alleged that the instrument was a conditional sale contract, not a lease; and further alleged that Parker Buck acted as agent for Guthrie in arranging the transfer of the lease to Smith, and that the latter transaction was a sale with the consent of Guthrie, relieving him of any further liability under the lease. By way of counterclaim against Parker Buck and Guthrie, Enders alleged that they were guilty of fraud against him and sought

recovery over if judgment was rendered against him in favor of the plaintiff. Enders also counterclaimed against Smith for judgment over by reason of the assignment and assumption agreement signed by Smith.

Answers by the named additional defendants were filed. The court found that the original transaction was a lease, that Enders had not been defrauded, and that the plaintiff had been damaged. The following finding of fact No. 15 on damages was entered by the court:

That the plaintiff has been damaged in the total amount of $6,350.40, less the amount of the payments on the contract of $4,233.60, leaving net damages in the sum of $2,116.80. That the gross amount of damages is computed as follows:

25% of the total contract value of $22,579.20 for the first 12 months when the equipment was not in the possession of plaintiff and/or additional defendant, Guthrie Investments, Inc., and the additional amount of $705.60 which represents 25% annual depreciation on the undepreciated balance for the additional two months when the equipment was not in the possession of plaintiff and/or Guthrie Investments, Inc.

Both the plaintiff and Enders have appealed. Although other parties were involved in the trial, we are only concerned with the respective contentions of Enders and the plaintiff.

We will consider first Enders' contention on cross-appeal that the agreement was in fact a conditional sale contract in the guise of a lease of personal property. Enders argues that the contract itself, except for its terminology, has all the provisions and earmarks of a conditional sale contract and that as a consequence of the plaintiff's repossession of the equipment upon a breach of the agreement it has elected its remedy and is precluded from recovery of any damages.

The agreement is entitled "Lease of Personal Property." It recites that the term of the lease shall be for 48 months and that the amount of each monthly payment shall be $489.22. No provision is made for a larger initial payment

as is generally the case where a conditional sale contract is intended. The lessee has the right to renew for not more than two successive one-year terms. It recites that the "[l]essee hereby leases from lessor, and lessor leases to lessee, the personal property . . . ." Alterations, additions or improvement are not to be made without written consent of the lessor; at all times until redelivery of the leased property to the lessor, the lessee shall keep it free from liens. The instrument also specifically provides: "Upon the expiration or earlier termination of this lease, lessee, at its expense, shall return the equipment in good repair, ordinary wear and tear resulting from proper use thereof alone excepted, by delivering it, packed and ready for shipment, to such place or carrier as lessor may specify." The document contains no language concerning the passage of title at any time. It contains no option to purchase.

██ We have before us an unambiguous contract. In determining whether it is a conditional sale or a lease, the intention of the parties must govern and this in turn must be ascertained from the contract itself. *Dixon v. Gustav,* 51 Wn.2d 378, 318 P.2d 965 (1957). The court's role is not that of contract maker, it merely gives total effect to the bargained-for contractual relations. *Crystal Recreation, Inc. v. Seattle Ass'n of Credit Men,* 34 Wn.2d 553, 209 P.2d 358 (1949); *Chaffee v. Chaffee,* 19 Wn.2d 607, 145 P.2d 244 (1943); *Peabody v. Star Sand Co.,* 186 Wash. 91, 56 P.2d 1018 (1936).

A conditional sale contract is defined as

> [A] sale in which the transfer of the title to the buyer . . . is made dependent upon some condition. Usually the condition imposed is the payment of the purchase price, but, whatever may be its nature, to constitute a conditional sale there must be a contract between the parties by which the one party agrees to sell and the other party agrees to buy. *Inland Finance Co. v. Inland Motor Car Co.,* 125 Wash. 301, 305, 216 Pac. 14 (1923).

In the recent case of *Heath Northwest, Inc. v. Peterson,* 67 Wn.2d 582, 408 P.2d 896 (1965), this court held that a document having substantially the same characteristics,

which purported to lease to the defendant a custom-made electric sign, was in fact a lease and not a conditional sale contract. In that case, as in this, the lessee offered extrinsic evidence that he was entitled to acquire title to the leased property at the end of the term. We held that such evidence was barred by the parol evidence rule.

We find the agreement to be a lease. It has all the earmarks of a lease, especially the requirement that the lessor may require the return of the property, and it contains no option to purchase. We find nothing in the contract which suggests that it was intended to be anything other than what it purports to be on its face, i.e., an agreement for the "Lease of Personal Property."

The plaintiff's contention on appeal is that the trial court did not apply the measure of damages contained in the agreement entered into by Enders. The agreement contains the following damage clause:

> In the event lessee defaults in the making of any rental payments when the same shall become due and payable or defaults in the performance of any other covenants of this lease, the lessor may at its option declare all rent for the entire term immediately due and payable and sue for the same if necessary. In the event the rent is so declared immediately due and payable, the lessor may take possession of the leased property and retain the same until said rental has been paid, including all costs of suit and the expenses of repossession; or the lessor may declare this lease terminated, repossess said leased property, and recover from the lessee for any damage or loss to the leased property, customary wear by careful usage excepted; or the lessor may pursue any other available remedy at law or in equity. In the event of repossession of said leased property, lessee agrees that the same may be done without process of law and that the lessor may enter upon the premises where the same is situated and remove the leased property therefrom, the lessee hereby waiving any trespass or right of action for damages by reason of said entry and removal. The license to enter said premises and remove said property therefrom is an irrevocable license and a part of the consideration of the leasing and rent of said property. Lessee agrees to pay all costs and expenses, including a reasonable attorney's fee, incurred

by lessor in enforcing any of the terms of this lease or pursuing any of its rights hereunder.

The plaintiff filed its complaint choosing to sue on the following quoted portion of the lease damage provision:

In the event lessee defaults in the making of any rental payments when the same shall become due and payable or defaults in the performance of any other covenants of this lease, the lessor may at its option declare all rent for the entire term immediately due and payable and sue for the same if necessary.

After the complaint was filed Guthrie retook possession of the tractor, taking advantage of that provision of the lease which begins: ". . . In the event the rent is so declared immediately due and payable, the lessor may take possession of the leased property and retain the same until said rental has been paid, . . . ." The trial court was of the opinion that, by failing to notify Enders that it was holding the tractor for his benefit, the plaintiff forfeited its right to recover the balance of the payments under the lease. The trial court also felt that Guthrie had a duty to mitigate damages and could have done so by leasing the equipment to another.

The trial court calculated and awarded damages under this provision:

[O]r the lessor may declare this lease terminated, re-possess said leased property and recover from the lessee for any damages or loss to the leased property, custom-ary wear by careful useage excepted; or the lessor may pursue any other available remedy at law or equity.

■ The commencement of the action on the contract for the accelerated rent was an election to proceed under its terms allowing such an option. The trial court recog-nized this election in its oral opinion as it said:

The Court is of the opinion that if Guthrie, or Guthrie's assignee, Northwest Collectors had sued Mr. Enders, as they did June 26 or 28, and stood on that, they would be in good position for judgment in accordance with the prayer of their complaint.

The plaintiff or Guthrie had a right under the lease to retake possession of the tractor and the fact that Guthrie

did so was not inconsistent with the election to seek recovery of all the rent.

The fact that Guthrie repaired the tractor and shipped it to Spokane does not preclude the plaintiff from asserting that it was held for the benefit of Enders. The tractor was not retaken until after the suit was commenced. When the tractor was retaken it had been in the possession of Noble for 60 days and he was not even an assignee of the lease agreement. It was in a state of disrepair, partially dismantled and inoperable. Enders' assignee, Smith, was not making rental payments and Enders knew this. The fact that the tractor was repaired and put in operable condition does not detract from the agreed-upon rights of the lessor; such action was even to Enders' benefit. Moving the tractor to Spokane, the site of Guthrie's and the plaintiff's home offices, thereby preventing storage costs, does not mean that the plaintiff acted in derogation of Enders' interest as lessee in the property. The lease does not designate the place for storing the tractor.

There is no evidence in the record that the plaintiff attempted to sell the tractor or otherwise cause it to be unavailable to Enders if and when he made the full rental payments. If he had desired to assert his rights under the lease, all he was required to do was comply with the conditions thereof and the plaintiff would have been required to redeliver the tractor. As a matter of fact he evinced no further interest in the tractor.

■ The plaintiff was not required by the contract to notify Enders that the tractor was in Guthrie's possession even though there was a duty to hold it for the lessee. To write into the contract such a condition is not within the province of this court. We are also of the opinion that the fact plaintiff did not notify Enders it was holding the tractor for his benefit was not an act of dominion, and, thus a belated exercise of the option to terminate the lease, take possession of the property and sue for damages. The bringing of the action and service on Enders was notice to him that plaintiff affirmed the contract under the provision re-

lating to acceleration of the rent. Implicit in such course of action is notice to Enders that the plaintiff could take possession of the property and hold it in his behalf until he chose to recover the property by making the proper payments.

Giving notice to Enders that it was being held for his benefit would have been a useless act. There was no evidence that Enders changed his position in any way as a result of the failure to notify him that the property was being held for him. But by the same token, holding it for his benefit was a useless act. A more reasonable procedure would have been to attempt to mitigate damages by leasing it or selling it.

Enders urges in support of the judgment that the acceleration clause provides for the exaction of a penalty and therefore the damage provision of the lease relied on by the plaintiff is unenforceable. He asserts that the amount to be forfeited or paid is disproportionate to the total amount involved.

It is conceded that the total amount to be paid under the terms of the lease equals the purchase price of the tractor plus the financing charges. Under the provision in question, that total amount becomes due and payable at the election of the lessor upon any default, whether at the beginning of the term or near the end. The evidence was that the tractor depreciates with the passage of time, but the rate of depreciation depends upon the amount of use. In other words, if the tractor were kept in storage for 4 years and never used, its usefulness would not be reduced in a degree comparable to what it would be if the tractor were in use during that period.

Thus, it appears that if Guthrie held the tractor for approximately 3 years after the default and it was not used in that time, he would be able to lease it and realize further income from it, even though Enders had been required to pay its full value in liquidated damages. It is evident therefore that the damages provided for are not reasonably related to actual damage sustained by Guthrie. The trial

court so found and further found that the provision for recovering damages sustained, in the event that Guthrie elected to declare the contract terminated, reflected a more realistic approach to the question of actual damages.

This court has said that contractual provisions for liquidated damages will be upheld unless it is shown that they are, in effect, a penalty, since there is no reason why an agreement fairly and understandingly entered into with a view to just compensation for an anticipated loss should not be enforced.

A provision in a contract which bears no reasonable relation to actual damages will be construed as a penalty. *Smith v. Lambert Transfer Co.*, 109 Wash. 529, 187 Pac. 362 (1920); *Electrical Prods. Corp. v. Ziegler Drug Stores, Inc.*, 141 Ore. 117, 15 P.2d 1078 (1932); *R.C.A. Photophone, Inc. v. Sinnott*, 146 Ore. 456, 30 P.2d 761 (1934); *Ray v. Electrical Prods. Consol.*, 390 P.2d 607 (Wyo., 1964).

We think the provision here in question falls within this definition. Under it Enders would be required to pay the full contract amount (in advance), whether his breach was total or partial and whether or not the property was fully depreciated.

The plaintiff contends that this case is controlled by *Heath Northwest, Inc. v. Peterson*, 67 Wn.2d 582, 408 P.2d 896 (1965). In that case, the sign which was leased to the defendant was custom-made for him, and there was no showing that it had any value to the lessor for any purpose other than leasing it to the defendant. Under such circumstances, the loss of the rentals for the term would necessarily deprive the lessor of all the value of his investment. But where, as here, the leased property is capable of being used by others and the lessor can recoup his losses by leasing or selling it, the extraction of its full value for a default in the lease which does not render it valueless is clearly a penalty.

In the *Heath* case, *supra*, we said that the defendant's contention that the contract provided for a penalty could not prevail because there was no evidence of the actual

damages sustained by the lessor. That is not the case here; the contract provided a measure of actual damages, and this was the measure adopted by the trial court.

■ This was not the ground assigned by the trial court for its decision. However, the trial court can be sustained on any ground within the proof. *See Lundgren v. Kieren,* 64 Wn.2d 672, 393 P.2d 625 (1964).

The judgment is affirmed.

FINLEY, C. J., HILL, WEAVER, HUNTER, HAMILTON, and HALE, JJ., concur.

NEILL, J. (concurring in part and dissenting in part)—I concur in the majority opinion as to the cross-appeal by Enders and agree that the trial court should be affirmed on the issues thus raised by the defendant Enders. I dissent as to the appeal of plaintiff.

The majority *apparently* holds that Enders abandoned the tractor and repudiated the contract, giving rise to a duty on the part of plaintiff to mitigate damages. The trial court made no finding of fact as to abandonment and repudiation, and since it is not the province of this court to make factual findings, I disagree with the majority in advising plaintiff that holding the tractor for Enders' benefit was a "useless act," and that "A more reasonable procedure would have been to attempt to mitigate damages by leasing it [the tractor] or selling it."

A nonbreaching party must attempt to mitigate losses once the breaching party's acts have become so flagrant as to, in effect, give notice that he repudiates the contract. *See e.g., Sunset Shingle Co. v. Northwest Elec. & Water Works,* 118 Wash. 416, 203 Pac. 978 (1922). But there must be a repudiation of the contract before the mitigation rule becomes operative. See 5 Corbin, Contracts § 1039 (1964) at 249.

During the period of the repair of the machine by the plaintiff and its storage thereof for the benefit of Enders and his assignees, Enders' assignees were attempting to secure another assignee for the contract who would take

over the obligation to plaintiff—a fact which negatives a repudiation of the contract. In this connection, Corbin, *supra,* states at 249:

> It is not necessary for the plaintiff to take steps to avoid losses, even though the defendant has actually committed a breach, so long as he has not definitely repudiated the contract and continues to assure the plaintiff that performance will take place.

I also disagree with the majority in its view that the acceleration provision constitutes a penalty.

We are here concerned with a normal business contract entered into openly and advisedly—a type of contract which is rapidly becoming commonplace in the industrial and business world. The result of the majority opinion may be to unduly restrict Washington operators in the use of this beneficial economic device whereby businessmen who do not have the capital to make the initial investment for equipment and machines which their businesses may require can, under rental arrangements, acquire the use of such chattels with a payment schedule stretching over an earning period. It is certain that leasing companies and financial institutions are going to be reluctant to risk the sizeable investments usually involved without the protective provisions of an acceleration clause.

The majority distinguishes our holding in *Heath Northwest, Inc. v. Peterson,* 67 Wn.2d 582, 408 P.2d 896 (1965), on the ground that in *Heath* the chattel involved was a sign built for special purposes and not capable of being used by others, whereas here the chattel is a tractor of a type in common use by many types of businesses. The distinction is important as to the extent to which the bailor may be able to mitigate potential loss, but in legal principle *Heath* is indistinguishable. Does the penalty which the majority finds result because of the nature of the property involved, or because of the nature of the acceleration clause? Since a substantially similar clause was upheld in *Heath,* I must conclude that the majority relies upon the nature of the property. Indeed, in setting out the reasons for declaring the clause a penalty, the majority hypothesizes that Guth-

rie *could have* held the tractor for 3 years before bringing suit, recovered the full rental amount from Enders, and then proceeded to re-lease the tractor to realize further income. Since a tractor in storage depreciates more slowly than one in use, Guthrie could have made a handsome profit under this hypothesis. It was this possible windfall which bothered this court in *Sunset Shingle Co. v. Northwest Elec. & Water Works, supra,* when it stated at 433:

> Now we think there arrived a time when the breach of the contract by respondent became so flagrant as to, in effect, give notice to appellant that it would no longer be bound by the terms thereof . . . . When appellant became so advised, we think it was then obliged to proceed, in the further protection of its rights, upon the theory that the contract, in those respects at least, was completely breached; and that thereafter appellant's damage, if any, suffered because of such breach, was measurable not by loss of profits, but by the expense of putting its plant in such condition, as to machinery and appliances, as would enable it to proceed in its manufacturing business as advantageously as it could have proceeded had respondent not so breached the contract.

Plaintiff did not delay the bringing of the suit until the lease period had nearly terminated. Instead, in good faith, plaintiff elected to affirm the contract by suing for rentals, all the while holding the tractor for Enders' benefit. Indeed, had the lessor sold or leased the tractor it would have thereby deprived Enders of his contract right to pay the rental and obtain possession of the machine. It is obvious, therefore, that the majority view is based on an absolute repudiation and abandonment of the contract, a forfeiture —a fact not established herein.

In effect, the majority has rewritten this contract for the parties, telling plaintiff that it had no right to elect to affirm the contract under the acceleration clause.

Plaintiff is not seeking damages in the usual sense of the word.[1] Rather, he seeks the benefit of his bargain. Conversely, defendant Enders suffers no penalty or deprivation

---

[1] See 5 Corbin Contracts § 995 (1964) for discussion of difference between debt and damages.

of property. Pay the rent and obtain full use of the tractor —that is the contract, which is neither unlawful nor contrary to public policy.

In a case involving forfeiture of property rights after default and true repossession in the sense that the lessor was terminating the contract and denying the lessee of any right of possession, I would have no difficulty in rejecting the distinction between rents and damages. See *Selts Inv. Co. v. Promoters of the Federated Nations of the World, Inc.*, 197 Wis. 476, 482, 220 N.W. 222, 222 N.W. 812 (1928-29), 99 A.L.R. 42, 48. But in the instant matter, it is apparent to me that plaintiff is seeking the benefit of his bargain, the very consideration as it were, rather than damages in the compensatory sense.

Professor Corbin, in discussing the nature of penalties, refers to forfeitures of money or property in case of failure to perform a contract. 5 Corbin, Contracts § 1057 (1964). Where there is no forfeiture can there be a penalty?

Even if we were to assume, arguendo, that defendant had fully repudiated the contract and abandoned the tractor so that the rule of mitigation of damages would be appropriate, we are faced with a total lack of proof as to the extent of such mitigation. This burden lies with the defendant, not with the plaintiff who seeks the full contract consideration. *Burr v. Clark*, 30 Wn.2d 149, 190 P.2d 769 (1948); 5 Corbin, Contracts § 1039 (1964); Restatement, Contracts § 336, comments (1932). The trial court, in effect, made a finding as to the dollar value of the mitigation without any evidence thereon. Certainly the depreciation approach used is not relevant to the question of the amount plaintiff might have recovered by leasing the machine to others for the balance of the term of the lease agreement. As pointed out by Professor Corbin, *supra*, at 241:

> Since the purpose of the rule concerning damages is to put the injured party in as good a position as he would have been put by full performance of the contract at the least necessary cost to the defendant, the plaintiff is never given judgment for damages for losses that he could have avoided by reasonable effort without risk of

other substantial loss or injury. Likewise, gains that he could have made by reasonable effort and without risk of substantial loss or injury by reason of opportunities that he would not have had but for the other party's breach are deducted from the amount that he could otherwise recover.

It is not infrequently said that it is the "duty" of the injured party to mitigate his damages so far as that can be done by reasonable effort on his part. Since there is no judicial penalty, however, for his failure to make this effort, it is not desirable to say that he is under a "duty". His recovery against the defendant will be exactly the same whether he makes the effort and mitigates his loss, or not; but if he fails to make the reasonable effort, with the result that his injury is greater than it would otherwise have been, he cannot recover judgment for the amount of this avoidable and unnecessary increase. The law does not penalize his inaction; it merely does nothing to compensate him for the loss that he helped to cause by not avoiding it. (Footnotes omitted.)

The proper rule, if mitigation were applicable, is stated in *Exeter Co. v. Samuel Martin, Ltd.*, 5 Wn.2d 244, 105 P.2d 83 (1940), wherein it was held error to instruct the jury it should allow as damages " 'the difference between the rent reserved in the lease and the reasonable rental value for the unexpired term.' " We therein stated the correct rule is that "[T]he lessor is entitled to recover the rent reserved to the end of the term less the amount actually received from subsequent tenants during the remainder of the term, provided it makes an honest and reasonable attempt to relet. (Citations omitted.)"

For the reasons set forth, I would reverse the trial court as to the matter of damages, and award judgment to plaintiff in the amount of the accelerated rent.