Motion for attorney fees denied April 26; argued October 6; reversed November 10; rehearing denied December 13, 1932

# ELECTRICAL PRODUCTS CORPORATION *v.* ZIEGLER DRUG STORES, INC.

(10 P. (2d) 910, 15 P. (2d) 1078)

*Herzog, Fulop & Kenin,* of Portland, for the motion.

*Joseph, Haney & Veatch* and *James Powers,* all of Portland, opposed.

KELLY, J. This is an action wherein plaintiff declared upon fifteen contracts by the terms of each of which defendant agreed to pay certain specified sums respectively for the use of an electric sign. Each contract is upon the same printed form as all of the others. Certain terms and conditions appear upon the back thereof. One of these terms is as follows:

"(f) In the event Lessor '(plaintiff)' shall institute and prevail in any action or suit for the enforcement of any of its rights hereunder, Lessee '(defendant)' will pay to Lessor a reasonable attorney's fee on account thereof;" etc.

■ Plaintiff recovered judgment in the sum of $10,244.40, and the further sum of $2,000, attorney's fees, together with its costs and disbursements. Defendant appeals.

Doubtless, plaintiff's motion for additional attorney's fees on appeal is based upon the doctrine of the case of *Goodspeed v. Duby et al.,* 131 Or. 275, 280 (283 P. 6), which was a suit in equity. One of the cases there cited is *Mills et al. v. Lehigh Valley R. Co.,* 226 Fed. 812, in which the District Court of the Eastern District of Pennsylvania allowed an additional attorney's fee for services performed in the Circuit Court of Appeals and in the United States Supreme Court. The practice thus followed by the federal court mentioned is based upon a holding by Mr. Chief Justice Taney of the Supreme Court of the United States in the case of *Sizer v. Many,* 16 How. 98 (14 L. Ed. 861), approving the allowance of appellate court costs by the trial court. Such a course is unnecessary and unwarranted as to the matter of costs in this court; but, as to reasonable attorney's fees contemplated by express contract of the parties, it affords ready means of adjudication.

This court has held that, in the absence of a statute authorizing it, the circuit court cannot allow or determine the costs and expenses of a trial in this court. *Johnson v. Prudential Life Ins. Co.,* 120 Or. 353, 363 (252 P. 556). This, however, merely disapproved of an anticipatory adjudication and is not inconsistent with the practice authorizing the trial court to determine the value of an attorney's services on appeal after such services have been fully performed. It must be borne in mind that we are not now considering the matter of costs on appeal, but only the matter of an allowance of attorney's fees for services on appeal where by contract the allowance of a reasonable attorney's fee has been expressly agreed upon.

In the absence of a statute authorizing it, this court has no power to award attorney's fees for services rendered for one of the litigants by an attorney upon appeal in a law action. *Lewis v. Continental Casualty Co.,* 135 Or. 170, 174 (295 P. 450); *State v. Mohler et al.,* 115 Or. 562, 579 (237 P. 690, 239 P. 193), 15 C. J. 274, § 677.

For these reasons, plaintiff's motion for an allowance of an additional fee for attorney's services upon appeal is overruled, denied and disallowed, without prejudice to an application hereafter to be made to the circuit court therefor.

---

ON THE MERITS
(15 P. (2d) 1078)

*John C. Veatch,* of Portland (Joseph, Haney & Veatch and James P. Powers, all of Portland, on the brief), for appellant.

*Ralph B. Herzog,* of Portland (Herzog, Fulop & Kenin, of Portland, on the brief), for respondent.

CAMPBELL, J. On April 29, 1929, plaintiff, an Oregon corporation, entered into a written contract with defendant, an Oregon corporation, whereby plaintiff agreed to install and lease defendant a certain advertising device known as a "Claude Neon Sign", and to maintain and service said sign for a period of 60 months, from date of installation, for the sum of $1,050, to be paid at the rate of $17.50 per month. This contract contained, among others, the following clause:

"(4) It is expressly recognized that said SIGN is expressly designed and to be constructed for the individual and distinctive uses and purposes of Lessee; and it is agreed that in case Lessee shall be in default in the payment of rent for a period of fifteen days, or shall abandon or be evicted from the premises where said SIGN is to be installed, or shall transfer Lessee's interest in said premises, or become bankrupt, or shall otherwise default hereunder or become guilty of a breach hereof, Lessor, may, upon notice to the Lessee, declare this lease and all rights of Lessee hereunder immediately terminated; and thereupon, in addition to all sums theretofore due and payable hereunder, ninety (90) per cent of the amount of all installments of rent herein provided to be paid during the remainder of the term hereof shall become immediately due and

payable to Lessor as liquidated damages for such breach of this agreement, and Lessor shall have the right to apply the balance of any deposit by Lessee then in Lessor's possession upon the total amount that shall have become due hereunder, and to take possession of said SIGN and hold the same free from any claim or interest from Lessee; except that if within fifteen days after Lessor's repossessing said SIGN Lessee shall pay to Lessor the remainder of the unpaid installments of rental provided for herein and any other sums in respect of which Lessee may be in default hereunder, and the expense occurred by Lessor in removing and reinstalling said SIGN, Lessee shall be entitled to the use of said SIGN as herein provided during the remainder of the term hereof.''

The defendant complied with all the conditions of the contract until October 1, 1930, when it defaulted in the payment of its monthly rental and ceased to pay any further installments. Thereafter, because of said default, plaintiff declared the lease and contract terminated under said clause (4), and brought this action on said contract as his first cause of action, to recover the rentals then due, and 90 per cent of all sums to become due thereon, amounting to $698.50. Said contract contained a provision for attorney fees for plaintiff in the event it should prevail in any suit or action it might institute thereon. It therefore prayed for a judgment for the amount claimed, and $100 attorney's fees.

Said contract also contained the following covenants:

''(a) Lessee will not tamper with, break, injure or remove said SIGN nor allow any other person to do so, and in the event the SIGN should fail to operate by reason of injury or damage thereto caused by any acts or neglects of Lessee, Lessee shall assume or pay all expense or cost required for repairing or restoring

said SIGN to operating condition, and there shall be no abatement of rental hereunder by reason of the failure of said SIGN to operate by reason of any such acts; * * *

"(c) Lessee will pay in addition to the installments of rental when and as herein provided, any and all taxes and public charges of any character which may be levied or assessed against said SIGN or the ownership or use thereof during the term of this lease.

"(d) Lessee * * * will punctually pay all charges due and payable for electrical current and electrical service required or used for the operation of said SIGN.

"(g) The SIGN shall be deemed personal property as against all persons whomsoever, and shall be and at all times remain the property of Lessor, free from any claim or right of Lessee or any persons claiming it by, through or under Lessee, except to the use thereof in accordance herewith. Upon the termination of this lease or any extension hereof, Lessor shall have the absolute right to remove said SIGN from the premises upon which it is installed, and Lessee agrees peaceably to surrender the possession of said SIGN upon such termination. It is expressly recognized that this agreement is one solely of leasing and hiring, and not a sale, conditional or otherwise, and the Lessee shall at no time during the term of this agreement or thereafter shall have any right or interest in said SIGN except as a Lessee from the Lessor herein pursuant to the provisions hereof.

"(i) Lessee will not assign this lease, or sublet said SIGN without the consent in writing of Lessor, and any such assignment or subletting without such consent, shall be void. * * *"

The defendant admits that it was delinquent in the payment of rent and that the plaintiff cancelled the contract. It set up as a separate answer and defense and by way of counterclaim, certain matters that are not material to this appeal.

Plaintiff united with his first cause of action, and separately stated fourteen other causes of action on contracts identical with the one in the first cause in all respects except as to location of premises, dates and amounts.

The answer to each of these causes of action is to the same effect as that to the answer to the first cause.

The cause was tried by the court without a jury and findings made for the plaintiff in the full amount of its claim on its fifteen causes of action, with $2,000 attorney's fees.

The theory upon which plaintiff presented its case was that clause (4) of the contract provides that, in case of default or breach of any of its terms, the plaintiff may cancel the contract and recover 90 per cent of all sums to become due thereon as liquidated damages. The question therefore presented for our consideration is the proper interpretation and construction to be placed on clause (4), the contention of plaintiff being that said 90 per cent is liquidated damages. The defendant claims that such a sum is a penalty or forfeiture and unenforceable.

The court made a finding of facts on which the judgment is based as follows:

"That by reason of said defaults and breaches on the part of the defendant, plaintiff has sustained actual damages as follows:

"(a) The amount of overdue installments of rentals, $231.00.

"(b) Rentals for the remainder of the time provided by said lease and agreements, less the expense of servicing and maintaining said sign, $9,993.43."

"When a contract, specifying one certain sum as liquidated damages, containing various stipulations of different degrees of importance, and the damages from the breach of some of which would be easily

ascertainable, though the remainder might belong to that class which justifies such arrangement as to damages, and by the terms of the contract such sum would be payable equally on the failure to perform the least as of that to perform the most important, or equally on the failure to perform the one, the damage from the violation of which would be easily ascertainable, as to that from the breach of which the loss would be difficult of ascertainment, the stipulated sum will be regarded as a penalty, and not liquidated damages, though the language of the parties be the strongest which could be employed to evince a contrary intent.'' Wilhelm v. Eaves, 21 Or. 194 (27 P. 1053, 14 L. R. A. 297); Learned v. Holbrook, 87 Or. 576 (170 P. 530, 171 P. 222); Secord v. Portland, 126 Or. 218 (269 P. 228); Alvord v. Banfield, 85 Or. 49 (166 P. 549).

The contract in the instant case has many covenants to be kept and performed by defendant; the failure on its part to comply with any one of them is sufficient to authorize the plaintiff to declare a forfeiture; the failure to pay rental, or taxes, or for electrical current or the assignment of the contract or the bankruptcy of lessee, the non-performance of any one of which would operate as authority for such cancellation.

''The rule that if the sum stipulated is so large as to be out of all proportion to the probable or presumptive loss, it will be regarded as a penalty, is generally held to be applicable without regard to the express language of the contract, and though such sum is expressly denominated stipulated or liquidated damages.'' 8 R. C. L. 567, § 116.

''The parties, then, must not only intend that the sum named shall be paid over to the plaintiff upon the breach; the sum must also be reasonable in itself. In other words, in every case where a fixed sum is stipulated as damages, the court will look to see whether the stipulated compensation is a reasonable one; and if not, they will require damages to be assessed as if

no stipulated sum were named in the contract. Just compensation for the injuries sustained is the principle at which the law aims, and the parties will not be permitted by express stipulation, to set this principle aside. * * * Some courts say that the damages must not be 'grossly excessive', some that they must not be 'unjust and oppressive', 'unreasonable', 'extravagant' or 'disproportionate'; but all seem to agree upon the principle that the stipulated sum will not be allowed as liquidated damages unless it may fairly be allowed as compensation for the breach, * * * so in any case if the damages are capable of estimate with reasonable certainty, a greater amount of stipulated damages will be regarded as a penalty.'' Sedgwick on Damages (9th Ed.) Sec. 407, page 780. In re Gelino's, 43 Fed. (2d) 832.

The plaintiff seeks to recover as liquidated damages an amount greater than it would receive had there been no default. These payments were to be made monthly over a period of forty-one months. Under clause (4) of the contract 90 per cent thereof becomes payable immediately upon breach. The present value of the monthly payments for that period of time, based on the legal rate of interest, would be less than 90 per cent thereof. Plaintiff would therefore obtain more than the present value of the rentals of the thing leased, and be relieved of the expense and burden of maintenance which, by the testimony of its manager, is estimated at from 8 to 12 per cent of the amount of rentals.

■ The amounts specified as liquidated damages in clause (4), of the contract, under the evidence and law must be considered as a penalty or forfeiture. It is not reasonable. It is for any one of several breaches or defaults which do not have a reasonable relation to each other in importance. It does not bear a reason-

able relation to the amount of damages reasonably to be anticipated. The actual damages are not difficult of computation or ascertainment.

The plaintiff is entitled to receive the rentals in full that were due at the time it terminated the contract and just compensation for the actual damages sustained by it by reason of the breach.

There is no competent evidence of the actual damages. Plaintiff's testimony discloses that there are several elements of expense that are taken into consideration in fixing the amount of rental. There is no evidence of the cost or value of any of these items, or when the items should be paid, with the exception of maintenance, and then only the conclusion of the witness that it (the maintenance) runs from 8 per cent to 12 per cent of the rental. Respondent relies strongly on the case of *Lamson v. Elliott,* 25 Fed. (2d) 4 (58 A. L. R. 295). The contract in that case is easily distinguished from the one in the instant case. There the contract itself specifically sets out that the user agrees to pay, for the use of the device, ''the cost of installing or continuing the Lamson system, for the license to use it under the owners letters patent, for the agreement to supply parts for repairs, etc.'' In that case, the court said:

''When competent parties, dealing as strangers, have provided for stated damages on default, and the damages are made proportionate to the extent of the default, and probably approximate the actual damages, no reason is seen for defeating the contract.''

The question of mitigation of damages is not presented by the pleadings. The defendant, in its second further and separate answer, alleges that on or about October 1, 1930, it entered into an agreement with plaintiff whereby the defendant agreed to use its best

efforts to enable plaintiff to obtain a new lease from a prospective purchaser of some of the premises where signs were being displayed. It alleges that plaintiff agreed that if it secured a new lease from defendant's prospective purchaser it would release defendant from any further liability on defendant's contract on any such premises. It further alleges that plaintiff, through defendant's efforts, did secure a new lease for a sign on the premises covered by plaintiff's first cause of action.

■■ This is not a question of mitigation, but one of release to be established by the defendant as any other allegation. The mere fact that plaintiff secured leases from the purchasers of the premises would not mitigate the damages.

The circuit court erred in its finding that plaintiff suffered actual damages in the sum of 90 per cent of the rentals to become due under the contract, as the evidence clearly shows that there were several items admitted by plaintiff which would lessen the damages that the court did not take into consideration. The judgment of the lower court should be reversed and the cause remanded with instructions to set aside the judgment and grant a new trial. It is so ordered.

Rossman, Brown and Belt, JJ., concur.