Earl L. RAY, also known as Shadow Ray,
Appellant (Defendant below),

v.

ELECTRICAL PRODUCTS CONSOLI-
DATED, a corporation, Appellee
(Plaintiff below).

No. 3189.

Supreme Court of Wyoming.

March 26, 1964.

Raymond B. Whitaker, Casper, oral argument by Jerry Yaap, Casper, for appellant.

Arthur F. Fisher, Casper, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

The matter before us involves a judgment rendered by the District Court of Natrona County on a contract for rental of a Zeon display sign.

Earl L. (Shadow) Ray, owner of Shadow's Sport Shop, entered into the contract with Electrical Products Consolidated, a corporation. Under the contract, Ray agreed to lease the sign and to pay a rental of $27.21 plus applicable sales tax each month for 60 months. He paid $136.05 in advance for the last five months of the 60-month period.

After use of the sign and payment of rental for two months, Ray discontinued his business and defaulted in further payments. Pursuant to a provision therefor in the lease agreement, the company thereupon declared the entire balance of all payments due and payable. Suit was filed for such balance, in the amount of $1,442.13 with interest, and for attorney fees which were provided for in the contract. Judgment was rendered for the full amount asked, and Ray has appealed therefrom.

Although the defendant interposed several defenses and has here contended that the contract was obtained by plaintiff's agent as the dominating party by unfair persuasion and conduct improper as a fiduciary, the argument is not sufficiently convincing to warrant discussion so that the appeal turns upon the defense interposed by defendant-Ray that the contract obligated the company to maintain the sign and to keep it insured; that it is now relieved from

the need for expenditures for these purposes and Ray should be given credit accordingly. The credit claimed was eleven twenty-sevenths (11/27) of the amount due.

The Zeon display sign was returned to plaintiff by defendant at his own expense, but it was recited in the court's pretrial-conference order and assumed by the parties in the briefs and arguments that the sign was repossessed. In a similar situation, in Electrical Products Consolidated v. Sweet, 10 Cir., 83 F.2d 6, 9—where there was a contract for the construction, lease and maintenance of a Neon advertising sign with a provision that upon breach thereof the lessor was entitled to repossess the sign and declare the balance of rentals due—the court held the lessor was entitled to recover only its actual damage for breach of contract. See also Annotation 128 A.L.R. 750, 756–757.

Although, in the Sweet case, the Tenth Circuit Court recognized a difference between real estate and a Neon sign, it said in neither can the damage for breach ever reach the full amount of unpaid rentals plus reclamation of the leased article. We realize of course that a sign made for one particular business may have only a limited value when repossessed by the maker, but whether that value be large or small, allowance must be made for it in determining plaintiff's damages.

As far as the case at bar is concerned, the defendant adduced evidence tending to show that a cost allowance was made by the sign company in the amount of $11 per month for maintenance and insurance and that lessor's damages should be reduced by that much. The plaintiff's local manager testified, however, maintenance cost was $6.86 per month and the cost of insurance was $1.10 per month. These figures, he said, were used in figuring maintenance and insurance on signs sold by the company.

The contract here involved provides that in the event of bankruptcy, receivership or other insolvency proceedings by or against the lessee, his interest in the contract shall be 25 percent of the amount of payment for the unexpired term, and that the balance (75 percent) is to be allowed the lessor as "liquidated damages for the reason it is impracticable to ascertain the actual amount of damage."

Obviously, it is just as impractical to ascertain the actual amount of damage under the circumstances of the present case as it would be where the lessee went into bankruptcy, receivership or insolvency. If the parties thought it fair and proper in the one instance to measure lessee's interest in the contract by taking 25 percent of the amount of payment for the unexpired term, which would allow the lessor 75 percent of the amount of the payment for the unexpired term as liquidated damages, then neither party can complain if the court uses the same measure of damages where business is discontinued for some other reason—at least in the absence of a contrary agreement and in the absence of evidence establishing a more equitable basis for the fixing of damages.

The A. L. I. Restatement, Contracts, § 339, p. 552 (1932), sets out this rule:

"(1) An agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless

"(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and

"(b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation." See 5 Williston on Contracts, Third Edition § 783, pp. 719–729 (1961).

If an agreement fixing damages is not enforceable where the amount fixed is not a reasonable forecast of just compensation, it would follow that an agreement to recover the entire balance of rentals contracted for, after repossession of the article bailed, could not be enforceable inasmuch as the entire balance of rentals would not

be a reasonable forecast of just compensation for harm done by a breach.

It is undisputed that Ray discontinued his business completely and that plaintiff is in possession of the sign.

With specific reference to a bailee's liability for breach of his contract, the rule is stated in 8 C.J.S. Bailments § 55(2), pp. 559–560, to the effect that the measure of such liability is such amount as will compensate the bailor for the detriment proximately caused by the bailee's failure to perform his obligation, and the bailor may recover his *actual* loss.

■ We think there can be no quarrel with the rule that a provision in a contract will be construed as a penalty or forfeiture and hence unenforceable if it bears no reasonable relationship to the amount of actual damages. In re Grodnik's, Inc., D.C.Minn., 128 F.Supp. 941, 943; Fox Chicago Realty Corporation v. Zukor's Dresses, Inc., 50 Cal. App.2d 129, 122 P.2d 705, 708; Electrical Products Corporation v. Ziegler Drug Stores, Inc., 141 Or. 117, 10 P.2d 910, 15 P. 2d 1078, 1081. This is simply another way of stating the rule which we previously quoted from A.L.I. Restatement, Contracts.

If we were to interpret Ray's contract as one which allows not only repossession but also 100 percent of the rents for the unexpired term as damages, when a person quits business without insolvency, while the mutual agreement of the parties is for 75 percent when there is insolvency, it would necessarily lead us to the conclusion that there is no reasonable relationship between actual damages and the 100 percent figure.

On the other hand, where a sign has been particularly made for a user and cannot be used by anyone else but has been repossessed, a credit allowance to the user in the amount of 25 percent or 20 percent has been considered reasonable. See Bassett v. Claude Neon Federal Co. of Kansas, 10 Cir., 65 F.2d 526, 527; Lamson Co. v. Elliott-Taylor-Woolfenden Co., 6 Cir., 25 F.2d 4, 7, 58 A.L.R. 295; and Mosler v. Woodell, 189 Wash. 583, 66 P.2d 353, 355.

In the Bassett case, 25 percent was considered as compensation to the sign company for the maintenance of the sign during the contract period, and 75 percent was considered as compensation for labor and materials furnished in the erection of the sign. Also in the Elliott case, it was said perhaps an attempt to collect the full amount of future payments, without reduction to their present value and without taking into account the future maintenance which the owner escaped, would have an aspect of forfeiture.

Whether the defendant-Ray discontinued his business in a solvent or insolvent condition, the expressed intention of the parties is sufficient to indicate that the best and most reasonable forecast of probable damages likely to result from a premature termination of the lease would be 75 percent of the rents for the unexpired term. See Annotation 106 A.L.R. 292, 296.

From the record it appears that at the conclusion of the trial the court shared our views on the law and stated to the defendant, "I find you are entitled to the defense of a reduction to the extent of the maintenance and insurance." However, briefs were thereafter submitted in which the plaintiff emphasized the holding of Electrical Products Corporation of Colorado v. Mosko, 88 Colo. 447, 297 P. 991, noting that it was absolutely controlling. The court was thus persuaded to enter judgment for the full amount of the unpaid contract.

■ We think the trial court's initial reaction was substantially correct and that the holding in the Colorado case is not here applicable. The contract there in question provided that under a number of circumstances (including bankruptcy, insolvency, and default in payment) the balance of the rentals might be declared due. Although the defendants in that case claimed the contract was void because it imposed a penalty or forfeiture having no reasonable relation to the damages suffered by the plaintiff, the court held a case of forfeiture had not been

made out and that the damages sought by the plaintiff were not so arbitrarily arrived at as to destroy the validity of the parties' agreement. In so holding it relied upon Lamson Co. v. Elliott-Taylor-Woolfenden Co., supra, at 25 F.2d 7, wherein the court indicated that when competent parties dealing as strangers provide for stated damages on default, and the damages are made proportionate to the extent of the default and "probably approximate the actual damages," the contract would be enforced.

In the Colorado case the element of insurance was not mentioned as affecting actual damages and the court pointed out that, as to maintenance, the obligation to service and repair the sign continues.

In the case before us, defendant asked for credit for insurance and maintenance, and plaintiff has not argued that these items would be a continuing expense for it. Plaintiff-Electrical Products should have been awarded its actual damages only, and in the absence of a more equitable basis for determining such damage, the 75-percent figure should be used. The trial court is therefore instructed to reassess plaintiff's damage in accordance with the views herein expressed.

Affirmed as modified.