**SILETZ TRUCKING CO., an Oregon corporation, Plaintiff-Appellee,**

v.

**ALASKA INTERNATIONAL TRADING COMPANY, an Alaska corporation, and John L. Bullock, Defendants-Appellants.**

**SILETZ TRUCKING CO., an Oregon corporation, Plaintiff-Appellants,**

v.

**ALASKA INTERNATIONAL TRADING COMPANY, an Alaska corporation, and John L. Bullock, Defendants-Appellees.**

**Nos. 26238, 26072.**

United States Court of Appeals,
Ninth Circuit.

Oct. 16, 1972.

Rehearing Denied Nov. 13, 1972.

Phillip D. Chadsey (argued), Cleveland C. Cory, Robert L. Ridgley, Richard E. Roy, of Davies, Biggs, Strayer, Stoel & Boley, Portland, Or., for plaintiff-appellee, Siletz Trucking Co.

Richard H. Muller (argued), of Tamblyn, Bouneff, Muller, Marshall & Richardson, Portland, Or., for defendants-appellants, Alaska International and Bullock.

Before HAMLIN, CARTER and CHOY, Circuit Judges.

CHOY, Circuit Judge.

Siletz Trucking Co. (Siletz), an Oregon corporation, sued Alaska International Trading Co. (Alaska), an Alaska corporation, and its President, John L. Bullock, a citizen of Washington, to recover liquidated damages under a defaulted equipment lease. The district court held Alaska and Bullock jointly and severally liable to Siletz for $113,439.77, with interest from the date of judgment, and $10,000 attorney's fees. The Judgment, however, did not include pre-judgment interest as provided for by the lease. Alaska and Bullock appeal and Siletz cross-appeals for pre-judgment interest.

We affirm the judgment against Alaska and Bullock, and deny the cross-appeal.

In August 1968 Siletz leased ten logging trucks and trailers to Alaska for four years with an option to purchase the equipment at the expiration of the lease. The lease was signed for Alaska by its President, John L. Bullock, who also executed at a later date a personal guaranty. Alaska discontinued rental payments after making only two payments. Siletz declared Alaska in default six months later and repossessed the equipment.

On appeal the parties raise three issues:

1. Was the liquidated damages provisions of the lease unreasonable and unconscionable?

2. Was Bullock's guaranty supported by consideration and enforceable?

3. Was Siletz entitled to prejudgment interest?

### 1. *Liquidated Damages Provision.*

Damages were awarded by the district court as computed under the liquidated damages clause in the lease.[1]

██ In this diversity action Oregon law controls because the business transactions involved in this suit occurred in the State of Oregon. In Oregon a liquidated damage clause is enforceable if at the time of the making of the contract the sum provided bears a reasonable relationship to the anticipated damages and the actual damages are difficult or impossible to ascertain. Medak v. Hekimian, 241 Or. 38, 44, 404 P.2d 203, 206 (1965).

█ While there is little doubt that the actual damages are difficult to ascertain, the parties strongly contest the reasonableness of the clause. Alaska contends that the clause is unconscionable because Siletz will receive more under the liquidated damages clause than it would have received had the contract been fully performed. However, this is not correct. We agree with the lower court's finding that the formula is reasonable and that alternative measures result in equal or greater damages.

Using the liquidated damage clause, Siletz receives $113,439.77 in damages. In addition it has possession and use of the vehicles worth $242,570.90 at the time of default. Thus, Siletz receives $356,010.67. Had Alaska performed its obligations, Siletz would have obtained $29,906 for rental payments in arrears at the time of the default; $306,536.50 remaining to be paid over the unexpired term, the present value (discounted at 5%) of which is $281,245.67; and at the end of the lease Siletz would have regained possession of the trucks then worth $44,859. Thus, had Alaska fully performed, Siletz would have received $356,010.67, the same amount that it is recovering under the liquidated damage clause.

This demonstrates that the formula in the liquidated damages clause does represent a reasonably accurate approximation of the prospective damages due to Siletz in the event of a default.

The two fundamental operations of the formula—(1) discounting the lessor's expectations under the lease to present value and (2) giving credit to the lessee for the benefits to the lessor upon default are sufficient elements of a fair liquidated damages provision. See Electrical Products Corp. v. Ziegler Drug Stores, Inc., 141 Or. 117, 125, 10 P.2d 910, 15 P.2d 1078 (1932).

### 2. *Bullock's Personal Guaranty.*

█ Bullock contends that the guaranty agreement was executed later and separately from the lease and, therefore, required a separate consideration to be enforceable. The evidence supports the district court's finding that there was adequate consideration.

This case is quite similar to Guthrie Investments v. Stanton, 252 Or. 465, 450 P.2d 551 (1969), in which defendant signed both a furniture lease and a guaranty. There as here, confusion existed as to when both documents were signed, but since there was no doubt that the lease was not accepted by plaintiff and the money advanced until the guaranty was signed by defendant, no extra consideration was held necessary. In the instant case, there is sufficient evidence to sustain a finding that there was an oral or tacit agreement between Siletz and

---

1. In essence, the clause called for a two-step calculation of damages as of the time of default:
   1. The aggregate of rental payments in arrears ($29,906) is added to the present value of all future rentals contracted to be paid over the unexpired term of the lease ($306,536.50 which discounted at the agreed rate of 5% the present value is $281,245.67).

2. That total is reduced by the difference between (a) the value of the equipment at the time of repossession by the lessor ($242,570.90), and (b) the residual value of the equipment upon its return at the end of the lease ($44,859). The total damages under this formula are $29,906 + $281,245.67 — ($242,570.90 — $44,859) = $113,439.77.

Bullock made prior to the execution of the lease that Bullock would sign a written guaranty.

We reject Bullock's contention that a finding of adequate consideration was based upon improper consideration of local business custom. There was sufficient evidence to support the finding. Siletz had received information from certain financial institutions indicating that any monetary obligations of Alaska should be backed by Bullock's personal guarantee. Prior to the execution of the lease Bullock was informed of this fact. After Bullock returned the lease by mail without signing the guaranty, the president of Siletz, Martin, promptly flew from Portland to Los Angeles to have Bullock sign the guaranty. Martin flew to Los Angeles a second time when he discovered that the guarantee was improperly signed. Only after the guaranty was properly executed were the vehicles delivered to Alaska.

Even assuming the validity of the guaranty, Bullock questions the scope of his liability on the guaranty. He contends that it was error to find him liable for attorneys' fees and liquidated damages as provided for in the lease. Since these issues were not raised in the district court, we will not consider them. Westinghouse Electric Corp. v. Weigel, 426 F.2d 1356 (9th Cir. 1970).

3. *Prejudgment Interest.*

Finally, Siletz seeks modification of the original judgment because no mention was made of prejudgment interest. The lease expressly provided for interest from date of default to the date of judgment but the district court did not award this interest. Siletz claims this was an oversight. Actually, it appears that Siletz did not raise the point at the trial. No mention was made in the complaint.[2] In addition, the judgment was amended once to correct clerical errors and no

mention of prejudgment interest was made at this time. Since the issue was not properly raised below we will not consider it now.

Affirmed.

---

**2.** We note that a request was orally made at the end of the trial for damages "with interest as requested" but this cannot be considered as properly raising the issue of prejudgment interest.