**RALSTON–PURINA COMPANY, a corporation, Plaintiff-Appellee,**

**v.**

**John P. BERTIE and L. Irene Bertie, husband and wife, Defendants-Appellants.**

**No. 74–3147.**

United States Court of Appeals, Ninth Circuit.

Sept. 7, 1976.

Rehearing Denied Oct. 13, 1976.

Lloyd J. Webb (argued), of Webb, Pike, Burton & Carlson, Twin Falls, Idaho, for defendants-appellants.

Samuel Kaufman (argued), of Anderson, Kaufman, Anderson & Ringert, Boise, Idaho, for plaintiff-appellee.

Before SMITH,* BROWNING and WALLACE, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

John and Irene Bertie appeal a judgment in a diversity action on an agreement guaranteeing a debt entered after a jury trial in the United States District Court for the District of Idaho, Fred Taylor, Judge. We find no error and affirm the judgment.

I.

In 1971 Ralston-Purina Company ("Purina"), a Missouri corporation, supplied feedmeal to Northwestern Poultry Growers ("Northwestern"), an Idaho corporation, which raised, processed, and sold poultry products. John Bertie was its manager and a stockholder. John and his wife Irene Bertie are residents of Idaho.

To ensure payment for the feed with which it agreed to supply Northwestern, Purina obtained a security agreement covering virtually all of the corporation's non-real estate assets and a personal guaranty from the Berties promising payment of any liabilities to Purina incurred by Northwestern "to the extent of Ninety-five Thousand Dollars" and payment of any otherwise unreimbursed costs incurred by Purina in attempting to collect debts owed it by Northwestern.

On January 3, 1972, Northwestern filed a petition under Chapter XI and was later adjudicated bankrupt. The corporation was unable to pay $141,597.86 of its debt to Purina. Consequently Purina took posses-

---

* Honorable J. Joseph Smith, Senior United States Circuit Judge, Second Circuit, sitting by designation.

sion of its debtor's frozen poultry inventory and the proceeds of an insurance policy covering other collateral which had been destroyed in a fire prior to Northwestern's bankruptcy. Purina's security agreement also encompassed Northwestern's live chickens which were being raised by independent growers for Northwestern with feed provided by Northwestern. Accordingly, Purina substituted itself for Northwestern in this arrangement—it supplied the growers with the monetary compensation and feed necessary to "grow the chickens out" and then sold the chickens once grown out.

Purina's financial involvement with Northwestern may be summarized as follows:

$141,597.86—Owed to Purina by Northwestern at time of bankruptcy

— 27,412.16—Net amount recouped from sale of frozen poultry inventory (*i. e.,* gross proceeds minus expenses arising from sale)

— 19,397.85—Proceeds from insurance policy covering collateral destroyed by fire prior to bankruptcy

— 20,648.91—Net proceeds from ultimate sale of live chickens (*i. e.,* gross proceeds minus feed expense minus compensation paid to growers)

---

$ 74,138.94—Amount of debt not recouped through collateral

+ 4,344.48—Miscellaneous collection expenses (*i. e.,* legal, phone, and travel expenses)

---

$ 78,483.42—Net amount owed by Northwestern to Purina after disposition of collateral.

On the basis of these figures, the jury concluded that the Berties were liable to Purina for $78,483.42. Judgment entered against John and Irene Bertie for that amount plus interest and attorney's fees set according to stipulation by the court.

## II.

The Berties contend that the interpretation of the guaranty was for the jury, that the $95,000 provision [1] limited the total amount of debt which Purina could extend to Northwestern and still remain within the total coverage of the Berties' guaranty, and that the amount realized from the collateral should therefore have been subtracted from $95,000—not from $141,597.86—to determine the extent of their liability for Northwestern's remaining debt to Purina. In other words, the Berties claim that they are not liable for any of Northwestern's debts to Purina which would not have arisen if Purina had not extended Northwestern more than $95,000 in credit. The Berties argue that the significance of the $95,000 provision is ambiguous and that the trial judge therefore erred in not allowing the jury to determine its meaning on the basis of extrinsic evidence of the parties' intent. We disagree.

Taken in its entirety and without amendment, the agreement can only reasonably be construed to limit the guarantors' potential liability to $95,000. The limitation is to the guarantors' agreement and in no way purports to limit or affect the underlying obligations of the customer. No expressions were used which indicated an intention to restrict or limit the customer's possible credit to the extent of the guaranty, let alone any intention to condition the guaranty on enforcement of any such limitation.

Since the meaning of the $95,000 provision was not ambiguous and therefore not dependent upon an evaluation of extrinsic evidence, the district court correctly deter-

---

1. I/we do hereby hold myself/ourselves primarily responsible for payment of all Customer's obligations and guarantee, promise and agree to and with Purina that Customer will well and faithfully pay any and all indebtedness of Customer to Purina, and/or will perform any and all covenants and/or conditions contained in any and all contract(s), note(s) or other instrument(s) between Purina and Customer, and the undersigned jointly and severally hereby guarantee and hold myself/ourselves primarily responsible for payment of any such funds advanced by Purina to Customer and/or of the purchase price of any such goods, equipment or merchandise purchased by or delivered on consignment to Customer from Purina, if now due or when due, either prior to or subsequent to this date, to the extent of Ninety-five Thousand Dollars ($95,000.00).

mined the provision's meaning. 3 Corbin, *Contracts* § 554, at 223–25 (1960 ed.); 4 Williston, *Contracts* § 616 (3d ed. 1961); *Deering-Milliken & Co. v. Modern-Aire of Hollywood, Inc.*, 231 F.2d 623, 625 (9th Cir. 1955).

### III.

The Berties' principal contention is that the district court committed reversible error when it disallowed certain testimony by John Bertie concerning the proper disposition of the frozen-poultry and live-chicken collateral. We disagree.

Idaho law required that Purina's disposition of this collateral be commercially reasonable with respect to "method, manner, time, place, and terms." Idaho Code § 28–9–504(3). In support of its contention that Purina's disposition of the collateral did not meet this standard, the defense attempted to elicit John Bertie's allegedly expert opinion as to the collateral's realizable value. Some of the efforts in this regard were disallowed by the district court. Accordingly, defense counsel tendered the following offer of proof:

First, Mr. Bertie's opinion as to what might reasonably have been expected to have been achieved through the sale of the frozen inventory had it been handled on a consignment basis, his opinion would be that it would have realized in excess of $49,500 for Ralston Purina if it had been disposed of on a consignment basis.

And then, secondly, again understanding the Court's opinion that this type of evidence was objectionable, we would tender an offer of proof as to the live bird inventory, that in the opinion of Mr. Bertie if the live birds had been processed through Northwestern Poultry Growers [sic] facilities as recommended by Mr. Bertie and then sold in the live bird market as they were processed, that these birds would have realized at least $93,000 which was the inventory value of the birds at the time that they were retaken by Ralston Purina.

The district court based its rejection of this offer of proof on two independent grounds. First, it noted that the defense had conceded that, although John Bertie had been well informed of the manner in which Purina was disposing of the collateral and had even participated in the disposition of the live chickens, he and his wife had not attempted to enjoin or restrict Purina's disposition of the collateral despite their ability to do so under Idaho Code § 28–9–507(1) merely upon a showing that Purina's disposition of the collateral would otherwise not be commercially reasonable. The court reasoned that Bertie was therefore estopped from testifying at trial that Purina's disposition of the collateral had been commercially unreasonable.

The application of the estoppel ground appears somewhat unusual. Estoppel usually describes a situation where action or inaction of a party has so misled another party into changing his position materially in reliance that it is inequitable and unfair for the first party to base a claim or defense on the actions of the second party done in such reliance. The court might have ruled that defendants, or at least John Bertie himself, were estopped from questioning the reasonableness of the method of disposition by reason of John Bertie's conduct in taking part in and acquiescing in the disposition.

■ This course was not taken, however. The jury was charged on the question of the reasonableness of the disposition, an issue before it largely on the cross-examination of plaintiff's witness, while Bertie was held estopped by his conduct to testify as an expert for the defendants. The basis for an estoppel was clearly present, for Bertie and his wife not only failed to object or oppose the disposition of the assets under the code, but Bertie also took an active part in the negotiations making offers ostensibly on his own behalf and as agent for others, and Purina proceeded with the sale of the frozen poultry and the growing out and sale of the live birds.

■ The court also sustained Purina's objection to the defense's offer of proof on

the independent ground that the proposed testimony would have been foundationless and therefore "purely speculative." John Bertie had some 30 years' experience in various aspects of the poultry business. His interest in the action and recent business failures would affect the weight, not the admissibility of his testimony. There was, however, no sufficient showing of the existence of or knowledge of presently existing markets on which to base an opinion. The ground of lack of foundation is therefore supportable. Although apprised of this ground at the time of the court's ruling, the defense nevertheless did not attempt to expand its offer of proof to allege the existence of any basis for Mr. Bertie's opinions, other than his general experience of 30 years in the poultry business.

The court did not abuse its discretion in excluding John Bertie's allegedly expert opinion of the value of the collateral, for the court's conclusion that this opinion would have been too speculative was not "manifestly erroneous." See, *e. g., Salem v. United States Lines Co.,* 370 U.S. 31, 35, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962). In light of the failure to establish any specific foundation for this testimony's reliability, its exclusion as too speculative was proper. The evidence that the course followed was commercially reasonable and proper was ample and it was not error to require some foundation for the bare opinion of a party to the contrary.

### IV.

■ The appellants further contend that the trial court did not adequately instruct the jury as to its duty to allow Purina only those expenses reasonably incurred in disposing of the collateral. However, the court's charge to the jury included the following language:

The proceeds of disposition shall first be applied to the reasonable expenses of retaking, holding, preparing for sale, selling and the like and, to the extent provided for in the agreement and not prohibited by law, the reasonable attorney's fees and

legal expenses incurred by the secured party . . . . .

\* \* \* \* \* \*

If you find that the charges and expenses charged by plaintiff in the handling and disposition of the security were reasonable and proper, then the only question for you to determine is whether plaintiff's ultimate disposition of the security was made in good faith and in a commercially reasonable manner.

The defense did not challenge the adequacy of these instructions at trial despite its opportunity to do so before they were read to the jury. We find the instant objection meritless.

### V.

■ Prior to trial, the Berties moved unsuccessfully for leave to assert an omitted counterclaim against Purina for $75,000 in damages allegedly arising from its sale of defective meat-meal to Northwestern in 1971. Fed.R.Civ.P. 13(f) provides that a party may obtain leave of the court to assert a counterclaim where the claim was omitted "through oversight, inadvertence, or excusable neglect, or when justice requires." Although this provision is generally applied liberally, a trial court's denial of a Rule 13(f) motion is reversible only where it constitutes an abuse of discretion. 6 Wright & Miller, *Federal Practice and Procedure* § 1430, at 155 (1971). The instant motion contained no allegation of timely notice of the claimed defects, and was made six months after the filing of the answer to Purina's complaint and two months after a pretrial conference. Furthermore, the record on appeal does not reflect any reasonable explanation of this delay. We find no abuse of discretion here.

### VI.

■ Appellants assert that "expenses other than those incurred in the collection from the guarantor (as distinguished from the collection from the debtor) are not chargeable to the guarantor." Even if this assertion were generally correct, in the in-

stant case it is clearly contradicted by the guaranty which states:

> In addition, in the event that Purina attempts to collect from Customer [Northwestern] covered by this guarantee any obligation hereunder and thereby incurs collection costs or expenses such as court costs, attorney's fees and other costs connected therewith, which are not fully recovered from Customer, I/we agree to be responsible to the extent of any amount of said collection costs or expenses not recovered by Purina.

### VII.

■ Appellants raise for the first time in their brief on appeal a question as to liability of Irene Bertie's separate estate for the judgment. We do not reach this question, raised but not discussed, for two reasons. First, it is not clear that the judgment will run against Mrs. Bertie's separate property, and second, it was not raised below by answer, pretrial motion or order, the motion for new trial or any motion to amend the judgment. See *United States v. Joyce*, 511 F.2d 1127, 1130 n. 1 (9th Cir. 1975); *Siletz Trucking Co. v. Alaska International Trading Co.*, 467 F.2d 961 at 964 (9th Cir. 1972); *Westinghouse Electric Corp. v. Weigel*, 426 F.2d 1356 (9th Cir. 1970).

We therefore choose not to consider the question on appeal.

The judgment of the district court is affirmed.