**Joe BOWEN and Robert Bowen, Appellants (Defendants below),**

v.

**Wayne C. KORELL and Gary Korell, Appellees (Plaintiffs below).**

**No. 4905.**

Supreme Court of Wyoming.

Dec. 15, 1978.

Frank J. Jones, Wheatland, for appellants.

Stanley K. Hathaway and Blair J. Trautwein of Hathaway, Speight & Kunz, Cheyenne, for appellees.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

ROSE, Justice.

This appeal concerns certain aspects of a judgment for damages alleged to have been sustained by the lessees, under a farm lease agreement, by reason of the lessors' breach and wrongful termination of the lease. The appellants-lessors do not challenge the underlying basis for the judgment, nor do they challenge the damages awarded for corn silage or for the newly planted hay fields. They do, however, challenge the evidentiary basis for the award of damages for hay fields in production at the time the lease was executed on the ground that the evidence was insufficient to support the

award, and the court's award of $10,000.00 for liquidated damages is questioned on the ground that it is inconsistent with the law applicable to such matters. We will affirm the award with regard to the existing hay fields, but will reverse the liquidated-damages award.

On April 16, 1976, the Bowens, appellants-lessors, entered into a written agreement with the Korells, appellees-lessees, under which the lessees were to farm the lessors' land for three years. Provisions for first-year compensation were formulated, which included the production of corn silage, the breaking out of sod for new alfalfa fields, and production on new and existing alfalfa and hay fields. The lessees were to be paid $115.00 per acre for "those acres now in hay production." The lease also provided that the lessees would be paid $10,000.00 if the lessors sold the land and the purchasers elected to terminate the lease. Second and third-year compensation for crops was to be negotiated at the end of the first year, with the lease to then terminate if a fair consideration could not be mutually agreed upon.

On October 19, 1976, the lessors gave notice that they were terminating the lease because of an alleged failure of the lessees to farm the land in a good and husbandlike manner. Subsequently, the lessees filed suit seeking damages under the lease caused in part by the alleged failure of the lessors to provide a timely supply of irrigation water, and seeking recovery of $10,-000.00 as the agreed value of their leasehold tenancy or, in the alternative, a continuation of the leasehold.

## HAYFIELD—DAMAGE AWARD

At trial, lessee-Wayne Korell testified that there were two hay fields from which there had been production. Three cuttings had been taken from a 26-acre hay field near the farm house, and one cutting had been taken from another 20-acre field. Lessee-Gary Korell testified that both areas were established hay fields. On appeal, the lessors seek to emphasize the cross-examination testimony of Wayne Korell. When asked if he knew why an irrigation ditch was removed on the 20-acre tract, he responded:

"I would. I know why it was removed. There was no intent of irrigating the field. It makes a better weed patch than it does alfalfa down there, with the near impossibility of irrigating it. The stand is very light in there. *There was no intention of harvesting hay off of that. It was never proposed for us to harvest the hay off it.*" [Emphasis supplied]

Reasoning that the lessees are bound by this testimony, the lessors argue that the parties did not intend that hay from the 20-acre field would be produced and, therefore, the court should not have awarded lessees $115.00 per acre for those 20 acres.

 While it is apparent that this testimony is damaging to the lessees' position in the fact-finding sense of the word, it is to be also observed that Wayne Korell further testified that he did sign the lease to harvest hay off of the 20-acre field. He presented, thereby, inconsistent indications of his intention with respect to raising alfalfa on the aforesaid 20-acre field. Coupling Wayne Korell's inconsistent statements with the other testimony, indicating that the 20-acre field was an established hay field from which there had been minimal production, we are unable to say as a matter of law that the trial court had insufficient evidence upon which to make this award. When there is evidence to sustain a trial court's finding, this court will not interfere with that finding unless it is clearly erroneous or so totally against the evidence or great weight thereof as to be manifestly wrong. *Alexander v. Kadolph*, Wyo., 562 P.2d 313, 314 (1977).

## LIQUIDATED DAMAGES

The lessors attack the liquidated-damages award with the contention that the provision of the lease which contemplated the $10,000.00 payment was applicable only in the event of a sale of the property and was not intended as a liquidated-damages clause. Lessees argue, and the trial court agreed, that $10,000.00 was an agreed-upon

value for their leasehold interest and, therefore, should be *enforced as a liquidated-damages clause* even though the contingency named was not the cause of the loss. In support of this position, the lessees rely on our decision in *Ray v. Electrical Products Consolidated,* Wyo., 390 P.2d 607 (1964).

In *Ray v. Electrical Products Consolidated,* supra, a contract for rental of a Zeon sign provided that upon default the entire balance could be declared due and payable. The contract also provided that in the event · of bankruptcy or insolvency on the part of the lessee, the lessor would be allowed 75 percent of the amount due for the unexpired term as liquidated damages. The lessee defaulted, for reasons other than insolvency, and the lessor declared the entire balance due. Judgment was rendered for the entire balance, without giving the lessee credit for maintenance and insurance expenses which the lessor saved by reason of a repossession of the sign and a termination of the lease. We held that the lessor was not entitled to the full amount of unpaid rentals plus reclamation of the leased sign, but was limited to his actual damages. The question, then, was how to measure the lessor's actual damages. We decided that neither party could complain if the court used the measure contained in the liquidated-damages clause, especially in view of the holding in other noted cases which had held a similar credit allowance to be reasonable. We also observed that the lessor had introduced evidence which would have supported a 30 percent credit allowance. The relevant feature of the Ray decision was the existence of a mutually agreed-upon liquidated-damages provision which was applicable in a specified default situation.

■■■ In this case, the lease provision provides for a $10,000.00 payment to the lessees in the event that the property was sold and the purchaser elected to terminate the lease. The lessees agreed to relinquish their leasehold interest, under such conditions, for a specified consideration. The question is whether the trial court erred in using this provision as the measure of the lessees' damage for a breach and wrongful

termination of the lease by the lessors. The lessees contend that the intent of both parties, in providing for the $10,000.00 payment, was to compensate the lessees for the purchase of equipment and for breaking new ground for farming in the event the lease was terminated for any reason prior to its three-year term. There is certainly evidence in the record that would support this conclusion. We have held in the past, however, that the meaning of an instrument is to be deduced only from its language if the terms are plain and unambiguous. *Shepard v. Top Hat Land and Cattle Co.,* Wyo., 560 P.2d 730, 732 (1977). The intent of the parties may be searched out by resort to parol evidence only when the language is ambiguous. See, *Mauch v. Ballou,* Wyo., 499 P.2d 591, 593–594 (1972). Since the parol-evidence rule is one of substantive law, this court must apply the rule—regardless of whether either party objected to the admission of such evidence—and disregard such evidence when erroneously admitted. See, *Bulis v. Wells,* Wyo., 565 P.2d 487, 490 (1977).

■ The language of the lease provision, regarding the $10,000.00 payment in the event of a sale, is plain and unambiguous as to the circumstances which would trigger its operation. We may not, therefore, consider evidence in the record indicating an intent for it to be a liquidated-damages provision, applicable in any and all situations where a lease has been terminated. To do so would be to rewrite the agreement of the parties. See, *Thompson v. Goubert,* 168 Cal.App.2d 257, 335 P.2d 754, 756 (1959). The plain language of this lease provision is sufficient, in itself, to distinguish this case from *Ray v. Electrical Products Consolidated,* supra, where the parties clearly manifested an intent to liquidate damages *in a default situation.* Here, we are not concerned with the mere difference in the character of the default. In this case, there is a wrongful termination, as opposed to a sale of the property. The parties agreed upon the lessees' right to compensation in the latter situation, but did not consider the former. The trial court erred, therefore, in

utilizing the sale provision as a vehicle for awarding liquidated damages for wrongful termination, there being no evidence of the parties' intent to pay or receive any sum contingent upon such eventuality.

■ It is important to note that generally a provision which contemplates liquidating damages where a breach occurs and it is clearly shown that such damages are available only in the event of such contingency, the provision will have no force and effect except upon proof of the breach provided for by the agreement. See, *Barlan, Inc. v. Reagan,* 220 Cal.App.2d 116, 33 Cal.Rptr. 831 (1963); *Bassett Construction Company v. Schmitz Painting Contractors of Colorado, Inc.,* Colo.App., 533 P.2d 503, 506 (1975), and 25 C.J.S. Damages § 114, at page 1087

(1966). Whether our decision in *Ray v. Electrical Products Consolidated,* supra, represents a narrow exception to this rule or should be reconsidered is not now properly before us and we make no decision in that respect.

For the reasons set out above, the appellees are not entitled to recover liquidated damages.

Affirmed in part and reversed in part.